**Gary Lee CAVANESS, Appellant,**

v.

**The STATE of Oklahoma, Appellee.**

**No. M–77–2.**

Court of Criminal Appeals of Oklahoma.

July 12, 1978.

As Corrected July 25, 1978.

Rehearing Denied July 31, 1978.

Michael L. Fought, Bartlesville, Oklahoma NORML, amicus curiae by C. Rabon Martin, Tulsa, for appellant.

Larry Derryberry, Atty. Gen., Bill J. Bruce, Asst. Atty. Gen., for appellee.

CORNISH, Judge:

Gary Lee Cavaness has appealed his conviction in the District Court, Washington County, of Possession of Marihuana. In his appeal he attacks the constitutionality of the statute under which he was convicted and raises several procedural errors. He also complains of the prosecutor's closing argument and alleges that he was denied a deferred or suspended sentence as punishment for asserting his right to a jury trial. The evidence presented at the trial showed that on May 1, 1976, the residence shared by the appellant and another person was burglarized and the appellant's roommate called the police. While in the residence, the police noticed signs of marihuana use. They completed their investigation at about 1:30 a. m. and left; but they returned at 8:00 a. m. with a search warrant. A small amount of marihuana was seized, along with some seeds and paraphernalia. The appellant and his roommate were arrested and charged with possession of marihuana. We affirm.

The appellant's first assignment of error is presented in a two-part argument. He asserts, first, that recent United States Supreme Court cases have firmly established that one has a constitutionally-protected right to privacy within one's home. He then argues that in order to justify a statute which violates that right the State must show a "compelling state interest." *Roe v. Wade*, 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973).

The proposition that there is a constitutionally-protected right to privacy within one's home is supported by the United States Supreme Court's treatment of obscenity cases in the last few years. In *Stanley v. Georgia*, 394 U.S. 557, 89 S.Ct. 1243, 22 L.Ed.2d 542 (1969), Justice Marshall, writing for a unanimous Court, cited with approval the following language from *Olmstead v. United States*, 277 U.S. 438, 478, 48 S.Ct. 564, 72 L.Ed. 944 (1928):

". . . The makers of our Constitution undertook to secure conditions favorable to the pursuit of happiness. They recognized the significance of man's spiritual nature, of his feelings and of his intellect. They knew that only a part of the pain, pleasure and satisfactions of life are to be found in material things. They sought to protect Americans in their beliefs, their thoughts, their emotions and their sensations. They conferred, as against the government, the right to be let alone—the most comprehensive of rights and the right most valued by civilized man. . . ."

When *Stanley* was decided there was some question as to whether it was based on the right to privacy in one's home or on the First Amendment right to freedom of speech. But in subsequent cases, the Supreme Court made it clear that the First Amendment did not apply to obscenity. *Paris Adult Theatre I v. Slaton*, 413 U.S. 49, 93 S.Ct. 2628, 37 L.Ed.2d 446 (1973); *United States v. 12 200-Ft. Reels*, 413 U.S. 123, 93 S.Ct. 2665, 37 L.Ed.2d 500 (1973). Thus, Stanley can only rest on the constitutional right to privacy within one's home. *United States v. Orito*, 413 U.S. 139, 93 S.Ct. 2674, 37 L.Ed.2d 513 (1973).

However, we do not find merit in the appellant's second proposition—that is, that the State must show a compelling interest in order to justify a statute which invades the right to privacy. We believe that the protection of one's right to privacy

in the home is best balanced against society's interest in the prevention of crime through strict adherence to the Fourth Amendment, rather than by separate inquiry into the justification of each criminal law.

"The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." United States Constitution, Amendment Four.

In the instant case it is clear the the appellant and his roommate waived this protection of their right to privacy when the police were invited into their home. Once inside, the officers were not obliged to close their eyes to the obvious. We therefore find the first assignment of error to be without merit.

In his second assignment of error, the appellant asserts that the court improperly refused to permit him to introduce the preserved prior testimony of Dr. Dorothy Whipple, taken at the hearing on his motion to set aside the information. At that hearing, Dr. Whipple testified as an expert on marihuana and its effects upon the user and society. The appellant proposed to present Dr. Whipple's testimony to the jury "in mitigation of punishment." The trial court ruled that Dr. Whipple's testimony was irrelevant, and excluded it. Some argument was had concerning whether or not the appellant had exercised due diligence in attempting to locate Dr. Whipple; however, the court did not base its ruling upon that ground. A review of Dr. Whipple's testimony reveals that it in no way dealt with the use by the appellant.

We agree with the State that evidence of the effects of marihuana is not a proper subject for the jury's consideration, even in mitigation of punishment. Such evidence in our opinion would be an appro-priate consideration for the legislature in its determination of what the range of punishment for possession of marihuana should be. But to allow the jury in a marihuana case to once again pass upon the issue after the legislature has done so would introduce elements of confusion and uncertainty. One jury in one case, after hearing such testimony, could decide that the danger is great and assess the maximum, while another jury, perhaps trying a co-defendant, could arrive at an opposite conclusion.

The cases cited by the appellant do not support his contention. *Ex parte Tidwell*, 95 Okl.Cr. 53, 239 P.2d 524 (1952), in not in point. In *Dobbins v. State*, 21 Okl.Cr. 403, 208 P. 1056 (1922), and *Call v. State*, 39 Okl.Cr. 264, 264 P. 643 (1928), the evidence sought to be introduced related directly to the defendants. In the instant case, the evidence is mere academic discussion, persuasive perhaps, but not an appropriate consideration for the jury.

The third assignment of error is that the appellant should have been permitted to call District Attorney John Lanning as a witness. The appellant sought to question him concerning the affidavit which was used to obtain the search warrant for the appellant's home.

In *Brown v. State*, Okl.Cr., 565 P.2d 697 (1977), we affirmed a long-standing rule that it is impermissible to go behind the face of an affidavit in an attempt to prove it erroneous.[1] The appellant's allegations clearly reveal that this was his purpose in calling the District Attorney, and it was therefore not error to refuse to permit him to do so. The role of advocate and witness should be kept separated, and an advocate should be called as a witness only in circumstances of the utmost necessity. *Brown v. State*, Okl.Cr., 506 P.2d 1396 (1973). Because of the nature of the appellant's assertions, we find that the requisite necessity has not been demonstrated.

Fourth, the appellant contends that the trial court erred in granting the State's pretrial motion in limine, the purpose of

---

1. But see, 12 O.S.Supp.1977, § 418.9, which was passed after the appellant's trial.

which was to prevent the appellant from introducing evidence tending to show that the Bartlesville Police Department made no effort to investigate the burglary of the appellant's home after arresting the appellant on the marihuana charge.

■ It is, of course, obvious that whether or not the police investigated the burglary has no bearing upon the appellant's guilt or innocence; and, although that fact, if true, should be made publicly known, we are of the opinion that it is not a proper consideration for the jury, since it would be apt to arouse their sympathy and distract them from deciding the issues on the basis of the law and the facts of the case.

In *Hopkins v. State*, Okl.Cr., 506 P.2d 580 (1973), we stated that the question of the admissibility of evidence is one left to the discretion of the trial court. In that case, the question involved the introduction of allegedly gruesome photographs. Quoting *Born v. State*, Okl.Cr., 397 P.2d 924 (1964), we reiterated the rule that for inflammatory evidence to be admissible its probative value must outweigh its prejudicial effect. In the case before us, the evidence of the investigation—or lack thereof—of the burglary after the appellant's arrest has no probative value, and its prejudicial effect is clear. The trial court did not therefore abuse its discretion by denying admission of the proposed evidence of the appellant.

In his fifth assignment of error, the appellant complains of the admission of certain statements made by the appellant while being "processed" into jail. During the trial, Police Detective Nix identified State's Exhibit No. 26, which was never admitted into evidence, as the Police Department "master file" on Gary Lee Cavaness. This file contained a form bearing the appellant's name and address. Detective Nix testified that the address had been obtained by him directly from the appellant while at the jail. The address, 3117 Interurban Drive, Bartlesville, coincides with the place where the appellant was arrested and the marihuana discovered.

On direct examination, Detective Nix gave the following testimony:

"[BY MR. PEABODY] And who processed Mr. Cavaness?

"A. I did.

"Q. All right. To your knowledge, had Mr. Cavaness been advised of his rights prior to this time?

"A. Yes, sir. Officer Kennedy advised him of his rights.

"Q. Was that in your presence?

"A. I believe it was, yes, sir. It was there at the residence."

On cross-examination, Detective Nix said this:

"Q. Now, when you were down at the jail and you told them they were supposed to fill out—to give you this information to fill out, this administrative form, did you explain to them that this was for the housekeeping purposes and it was required in order to book people in and out?

"A. For the housekeeping purposes?

"Q. Well or for the administration of the jail and police department and so on and so forth?

"A. Yes, sir. We obtain a background statement, photographs, fingerprints of everybody arrested regardless of who they are or what they are.

"Q. Did you explain to them that if they answered these questions that that could be used against them in a court of law?

"A. No, I did not."

The appellant presents a convincing argument. On the one hand he acknowledges the State's need to have the information in order to better conduct its administrative tasks, but on the other hand he raises an accused's right to remain silent. Recognizing that the efficient administration of justice, particularly of the jails and courts, demands receipt of information of the sort garnered from the defendant at the time of his booking, the appellant urges this Court to hold such information inadmissible as evidence. If this is not done, says the appellant, then defendants must necessarily refuse to provide such vital information as name and address because of the possibility that it may be used as evidence.

The appellant also contends that requiring such forms to be completed in order to secure bonding, and then using them as evidence, forces a defendant to incriminate himself in order to assert his constitutional right to bail. The record, however, does not support the appellant's contentions that the form from which Detective Nix testified was used in the bonding and bail procedures.

Regarding the form from which Detective Nix testified as an administrative one, we are of the opinion that the information on such forms is admissible in a proper case where it is relevant and where a defendant has been warned that his or her answers may be used against him or her. This is necessary to comport with *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). In the instant case, we find that the appellant was not so advised at the time he was asked the questions. The record clearly reflects that although the appellant was advised, the warning was given immediately upon his arrest and while still in his home. In a situation such as this, with questioning taking place at the jail during booking, and where the questions asked are simply informational, i. e., name, age, address, etc., then in order for the State to use a defendant's answers against him or her the interrogation must be preceded by a warning reasonably contemporaneous in time.

On a review of the record, however, we find that the State introduced other evidence which sufficiently proved that the appellant had dominion and control of the marihuana. For that reason the error did not constitute a substantial invasion of the appellant's rights, and it was therefore harmless. Title 20 O.S.1971, § 3001.

The appellant's next two assignments of error, that his demurrer should have been sustained and that the trial court was biased, although not malevolently so, are both unsupported by citations of authority and we therefore do not consider them. *Collins v. State*, Okl.Cr., 407 P.2d 609 (1965).

The eighth assignment of error concerns the prosecutor's closing argument. The appellant refers to six specific incidents, but his objections were sustained and admonishments given in all but one. Generally, such an admonishment cures the error unless it is fundamental. *Wiley v. State*, Okl.Cr., 551 P.2d 1146 (1976). After a careful examination of the record, we conclude that the improper statements were not so fundamentally prejudicial that the admonishment given amounted to a useless gesture. The error in these instances was cured.

The only instance in which the trial court did not sustain the appellant's objection was the following:

". . . The State hasn't alleged and the State hasn't tried to prove that Gary Lee Cavaness was a dope dealer; that he had pounds and pounds of dope inside that—

"MR. FOUGHT: Objection, your Honor—

"MR. PEABODY: —house. It is only alleged, one thing—

"THE COURT: I'll let him proceed on that.

"MR. PEABODY: —that he was in unlawful possession of marihuana. . . ."

This is clearly a proper comment upon the evidence, well within the liberal range of argument permitted. See, *White v. State*, Okl.Cr., 552 P.2d 1161 (1976).

The appellant's ninth assignment of error is that the verdict is contrary to the law and evidence. No citation of authority is made, and we therefore decline to consider the argument. *Collins v. State*, supra.

Finally, the appellant argues that the trial court improperly refused to consider granting a deferred or suspended sentence. He alleges that it is the established practice in Washington County to grant suspension or deferral to first-time marihuana offenders, except when a defendant asserts his right to a jury trial. The appellant claims that this infringes both his constitutional right to a jury and his statutory right to be considered for suspension or deferral of sentence. We agree with the appellant's legal premises.

In *United States v. Jackson*, 390 U.S. 570, 88 S.Ct. 1209, 20 L.Ed.2d 138 (1968), the United States Supreme Court held unconstitutional, in part, a federal statute proscribing kidnapping, which provided that in case of conviction the jury could recommend death. As interpreted by the Court, the statute was such that if a defendant pled guilty he could not receive the death penalty. The Court concluded that such an arrangement induced defendants to forego their right to a jury trial and stated:

"It is no answer to urge, as does the Government, that federal trial judges may be relied upon to reject coerced pleas of guilty and involuntary waivers of jury trial. For the evil in the federal statute is not that it necessarily *coerces* guilty pleas and jury waivers but simply that it needlessly *encourages* them. A procedure need not be inherently coercive in order that it be held to impose an impermissible burden upon the assertion of a constitutional right. . . ." (Emphasis original) 390 U.S. at 583, 88 S.Ct. at 1217.

 In the instant case it is obvious that the appellant was not pressured into pleading guilty, because he had a jury trial. He therefore has no constitutional complaint. He does, however, have a statutory right to be considered for a suspended or deferred sentence, without any consideration being given to the fact that he asserted his right to a jury trial. The Oklahoma statutes providing for suspension or deferral, 22 O.S.Supp.1977, §§ 991a, et seq., speak in terms of convictions, not just guilty pleas.

In *Gillespie v. State*, Okl.Cr., 355 P.2d 451 (1960), we considered this very issue. At that time, suspension of sentence was authorized by Section 991 of Title 22. In that case, the trial court stated into the record that it was denying the application because the defendant had insisted on a jury trial. We stated:

". . . A policy designed to deny defendant a suspended sentence solely because he demanded a jury trial is contrary to law and an unjustifiable denial of defendant's rights to have his application for a suspended sentence considered upon its merits.

"In considering the application for suspension, the court must consider among other things, the showing made as to whether the defendant is a first offender, as to his previous character, and actions and as to whether it reasonably appears that defendant will abide by the terms of his probation and may be reasonably expected to be compatible with society and likewise consider society's interest. . . ." 355 P.2d at 456

It has often been recognized by this Court that suspension or deferral of sentence is a matter of grace, to be granted or denied by the trial court in the exercise of its best discretion. However, a defendant's exercise of his or her right to a jury trial is not a proper factor. The provisions providing for suspension or deferral were not enacted to provide the district attorneys with more leverage in the plea-bargaining process.

In the instant case, no transcript of the sentencing has been included in the record, and we thus have no way of knowing the basis of the trial court's ruling. In fact, the only mention of an application for suspension or deferral appears in the appellant's motion for a new trial. In that motion, the appellant's counsel expressed his disappointment at the court's refusal to consider his application and cited two cases, *United States v. Jackson*, supra, and *United States v. Wiley*, 278 F.2d 500 (7th Cir. 1960). *United States v. Wiley* deals with this same issue, but in a federal forum. In that case, the Court of Appeals held as error the trial court's refusal to consider a probated sentence. Wiley, a first offender, had been given a three-year term with no probation. Several co-defendants, all with prior felony convictions, had received lesser terms after pleading guilty. Wiley had exercised his right to a jury trial, and the Appeals Court held that his relatively severe sentence could only be viewed as punishment for doing so.

The State's answer to the appellant's argument at the motion for new trial can be summarized in one quote from District Attorney Peabody's argument:

". . . Your Honor will remember in the record the State made no recommendation whatsoever to the jury as to what the punishment should be. And we think there can be no purer reflection by the jury in the community's feelings to this type of charge than the one that was given in this case. . . ."

We are of the opinion that the appellant has failed to show that in denying his application the trial court relied upon a forbidden ground. The record contains neither a written application for suspended sentence nor a transcript of an oral application. We thus do not know whether such an application was in fact made or, if so, the nature of the court's ruling. Further, we cannot say that the refusal to suspend all or part of the 60-day sentence for possession of marihuana, under the facts of this case, amounts to an abuse of discretion. The appellant presents no proof that suspension or deferral is in fact the established practice in Washington County in cases such as this. It thus may very well be that, as the District Attorney argued, a 60-day sentence accurately reflected the community's view of the crime charged. Defense counsel, however, is reminded of the provisions of 22 O.S.1971, § 994, which provides that the trial court may suspend the sentence after appeal. We do not intimate by this that the trial court in any way erred, because the record does not support such a conclusion. However, if the motion is properly made, the trial court should consider it in light of *Gillespie v. State*, supra.

For the foregoing reasons the judgment and sentence is AFFIRMED.

BUSSEY, P. J., and BRETT, J., concur.