Jerry Thane **DAVIS**, Appellant,

v.

**STATE** of Oklahoma, Appellee.

No. F–86–865.

Court of Criminal Appeals of Oklahoma.

April 3, 1990.

Rehearing Denied May 18, 1990.

---

Kent Eldridge, Oklahoma City, for appellant.

Robert H. Henry, Atty. Gen., Terry J. Jenks, Asst. Atty. Gen., Oklahoma City, for appellee.

## OPINION

LUMPKIN, Judge.

Appellant Jerry Thane Davis was tried by jury and convicted of Conspiracy to Distribute a Controlled Dangerous Substance (Cocaine) (Count I) in violation of 63 O.S.1981, § 2–408; Distribution of a Controlled Dangerous Substance (Cocaine) (Count II) in violation of 63 O.S.1981, § 2–401; Possession of a Controlled Dangerous Substance (Cocaine) (Count III) in violation of 63 O.S.1981, § 2–402; and Possession of a Weapon while Committing a Felony (Count IV) in violation of 21 O.S. 1981, § 1287 in the District Court of Oklahoma County, Case No. CRF–85–5858. The Appellant was sentenced to five (5) years imprisonment and a five thousand ($5,000.00) dollar fine (Count I), five (5) years imprisonment and five thousand ($5,000.00) dollar fine, with fine suspended (Count II), two years imprisonment (Count III) to run concurrently with Counts I and II, three (3) years imprisonment (Count IV) to run concurrently with Counts I and II. From this judgment and sentence, Appellant has perfected this appeal. We affirm.

At approximately 10:30 p.m. on May 2, 1985, Oklahoma City Detectives James Cain and James Osborn met with two individuals named Rick Evans and Ron Roberts to purchase cocaine as part of an undercover narcotics investigation. Detective Osborn had previously arranged the meeting with Evans and Roberts in order to purchase one half ounce of cocaine. Meeting initially at an apartment complex on the south side of the city, Evans and Roberts urged the detectives to give them the money and wait at the apartment for them to return with the cocaine. Fearing that Evans and Roberts might steal the money, the detectives refused to wait and followed the men to the northwest side of town. Cain and Osborn then agreed to wait in the parking lot of an ice cream store on north MacArthur for Evans and Roberts to return with the drug. Arriving at the parking lot shortly before the store's 11:00 p.m. closing time, the detectives noticed the people in the store nervously looking out the windows at the two cars in the lot. Realizing that Evans and Roberts were becoming nervous about the situation, the detectives gave the men the money and agreed to wait for them at another restaurant across the street.

The operation was originally to have been a "buy/walk" with the detectives allowing Evans and Roberts to leave without arrest after the transaction. Therefore, the serial numbers of the money used in the transaction were not recorded. However, the twelve hundred ($1,200.00) dollars used to purchase the drug consisted of (12) twelve new one hundred dollar bills, folded over twice, with thousand dollar bundles stapled at one end, then paperclipped together. Detective Cain handed Roberts the $1,200.00 and Roberts was to return with a half ounce of cocaine in five minutes. Approximately 10 minutes later, Evans and Roberts returned with a plastic bag containing white powder which was later determined to be cocaine. Waiting for Evans and Roberts to leave the area, Cain and

Osborn were contacted by a surveillance unit who had been monitoring the operation and informed the officers that a decision had been made to arrest Evans and Roberts. The men were subsequently arrested by another unit in the area.

A search of both men failed to yield the $1,200.00. Roberts agreed to cooperate with the officers and named Hugh Sprague as the individual from whom he had obtained the cocaine. Roberts provided directions to Sprague's residence. The officers obtained a search warrant for the Sprague residence and executed it immediately. Finding Hugh Sprague at home, the officers searched the house and questioned him about Evans and Roberts. Sprague admitted that Evans and Roberts had earlier obtained the cocaine from him, but the cocaine had been supplied to him by the Appellant. Sprague told the officers that the Appellant had delivered the cocaine earlier in the evening and returned later to pick up the money. He gave the officers a description of the Appellant and the car he was driving and possible locations where he could be found that night. Detective Cain radioed the information to Officer Yarborough and both officers proceeded to search for the Appellant.

Yarborough spotted Appellant's car in a parking lot of the club Faces. Relaying this information to Cain, Yarborough was directed to follow Appellant until Cain arrived. Appellant left the club for the nearby Denny's restaurant. Yarborough was then able to detain Appellant until Cain arrived. After Appellant identified himself he was placed under arrest for conspiracy to distribute cocaine. A search of Appellant yielded a small bottle containing white powder from his pocket and $1,400.00 cash, including the $1,200.00 used earlier by the detectives to purchase the cocaine. A search of his vehicle revealed a fully loaded .22 automatic pistol in the glove compartment. Discovered in the trunk was a blue gym bag containing scales, a sifter, a funnel, a plastic straw, a small bag of white powder later determined to be cocaine, and a larger bag of white powder later determined to be used as a cutting agent.

In his first and second assignments of error, Appellant argues that the information as to Counts I and III was fatally defective as it failed to set forth the elements of the charged offense and the acts committed by Appellant. We find that this issue is not properly before the Court. An objection to the sufficiency of the information cannot be raised for the first time on appeal unless some foundation was laid for the objection before the final judgment was rendered. *Willis v. State*, 64 Okl.Cr. 213, 78 P.2d 840, 841 (1938). Generally, when a defendant pleads to an information and proceeds to trial, he waives his right to attack the sufficiency of the information on appeal. *Short v. State*, 634 P.2d 755, 757 (Okl.Cr.1981). In the present case, after entering a plea of not guilty at the arraignment, Appellant filed a Motion to Quash Arrest, Dismiss, and Set Aside Information. (O.R. 17). The body of the motion alleges that the State failed to meet its burden of proof against Appellant by independent, competent evidence. The motion did not address whether the information contained the elements of the offense charged or whether the information correctly apprised the Appellant of what he must be prepared to meet. In substance it was a Motion to Quash for insufficient evidence rather than a defect on the face of the information. This Court remains committed to the general rule that a timely objection must be made on the record to preserve any alleged error for appellate review. *Wood v. State*, 748 P.2d 523, 525 (Okl.Cr.1987). A timely objection brings the alleged error to the attention of the trial court and provides an opportunity to correct the error at trial. *Davis v. State*, 753 P.2d 388, 392 (Okl.Cr.1988). Here, Appellant failed to properly demur to the information and has therefore waived review of this issue on appeal. *Allen v. State*, 734 P.2d 1304, 1306 (Okl.Cr.1987).

We have further reviewed the propositions for fundamental error and determine the test of the sufficiency of an information to be 1) whether it contains the elements of the offense charged and cor-

rectly apprises the defendant of what he must be prepared to meet, and 2) whether a conviction under the information would expose the defendant to the possibility of subsequently being put in jeopardy the second time for the same offense. *Allen,* 734 P.2d at 1306. This must be determined on the basis of practical rather than technical considerations; hair splitting is to be avoided. *United States v. Moore,* 556 F.2d 479, 483 (10th Cir.1977). Applying this reasoning, we hold that Appellant was adequately advised of the precise charges levied against him. Both Counts I and III clearly set forth the elements of the offenses of which the Appellant was charged in terms which would allow him to prepare an adequate defense. Further, a conviction for the offenses outlined in the information would be a bar to subsequent prosecutions for the same offenses. Therefore, we refuse to reverse on this allegation of error.

■ In his third assignment of error, Appellant contends that the evidence of conspiracy was insufficient to sustain the jury's verdict. He argues that the State failed to prove the existence of an agreement between the parties to commit an unlawful act and that he performed no overt act in furtherance of the object of the conspiracy. The statutory elements of a conspiracy are (1) an agreement to commit the crime charged and (2) an act by one or more of the parties in furtherance of the conspiracy, or to effect its purpose. See 21 O.S.1981 § 421 and § 423. In *Fetter v. State,* 598 P.2d 262, 265 (Okl.Cr.1979), we stated:

> The crime of conspiracy, by its very nature, is a crime clothed in secrecy and is very seldom proved by direct evidence. Thus, the existence of a conspiracy need not be proved by direct evidence, but proof of circumstances from which the existence of a conspiracy may be fairly inferred is sufficient. *Pearson v. State,* supra. [556 P.2d 1025 (Okl.Cr.1976)]

Whether an actual agreement was made by Appellant is a question to be resolved by the trier of fact. *Russell v. State,* 654 P.2d 1058, 1066 (Okl.Cr.1982). If there is reasonable evidence upon which the trier of fact may base a finding that an agreement existed, this Court will not disturb the decision on appeal. *Id.*

In the present case, Hugh Sprague testified that he entered into an agreement with the Appellant to distribute cocaine. (Tr. 67) Sprague further testified that Appellant delivered the cocaine to him, that Evans and Roberts picked up the cocaine from Sprague and that Appellant returned later for the money. (Tr. 68–70). Detective Cain testified that when Appellant was arrested he was found to be in possession of the money Cain originally gave to Evans and Roberts for purchase of the cocaine. (Tr. 25).

■ We find there was competent evidence from which the jury could find a pre-existing agreement between the Appellant and Sprague to distribute cocaine. Further, Appellant's delivery of the cocaine to Sprague and his possession of the money given to Sprague in exchange for the cocaine were overt acts in furtherance of the object of the conspiracy. *See Blaylock v. State,* 598 P.2d 251, 253 (Okl.Cr.1979). Accordingly, we find the Appellant's actions were sufficient to complete the crime of conspiracy to distribute cocaine and this assignment of error is denied.

■ Appellant further argues that the evidence was insufficient to sustain a conviction for Distribution of Cocaine. The evidence in the present case showed that Appellant was found with $1,400.00 cash in his pocket, including $1,200.00 previously supplied by Detective Cain for a controlled buy of cocaine; a gun, a baggie with a trace of cocaine, a bag of white powder commonly used as a cutting agent; and scales, sifter and a funnel, tools commonly used in the distribution of cocaine. Appellant was the only person in the car. We find that this is competent evidence from which the jury could reasonably conclude that the Appellant was guilty of Distribution of Cocaine. *Orgill v. State,* 660 P.2d 649, 651 (Okl.Cr.1983).

■ In the fifth allegation of error, Appellant challenges the admission of State's Exhibit Number 8 and argues that the

chain of custody as to all the demonstrative evidence introduced was improperly maintained. This Court has long held that the purpose of the chain of custody rule is to guard against substitution of or tampering with the evidence between the time it is found and the time it is analyzed. *Middaugh v. State*, 767 P.2d 432, 436 (Okl.Cr. 1988). The State must lay a foundation showing that the evidence offered is in substantially the same condition as when the crime was committed. *Driskell v. State*, 659 P.2d 343, 354 (Okl.Cr.1983). However, it is not necessary that all possibility of alteration be negated, and any doubt as to the circumstances surrounding the preservation of the evidence goes to the weight of such evidence rather than its admissability. *Fixico v. State*, 735 P.2d 580, 582 (Okl.Cr.1987).

The Oklahoma Evidence Code provides for the admission of relevant evidence under certain limitations. "When the relevancy of evidence depends upon the fulfillment of a condition of fact, the judge shall admit it upon, or subject to, the introduction of evidence sufficient to support a finding of the fulfillment of the condition." 12 O.S. 1981, § 2105(B). Therefore, a necessary condition or prerequisite for the admission of the demonstrative evidence is proper authentication or identification. 12 O.S. 1981, § 2901. Generally this foundational predicate is fullfilled through "[t]he testimony that a matter is what it is claimed to be[.]" 12 O.S.1981, § 2901(B)(1).

In the instant case, Detective Cain testified that upon arresting Appellant he seized a small bottle containing white powder from Appellant's pocket. From the trunk of Appellant's car he retrieved several items of drug paraphernalia including a baggie containing white powder, one baggie containing a trace of white powder, a sifter and a funnel. (Tr. 25–28) These items were transported to the police station wherein they were individually labeled and placed in a police department evidence envelope, sealed with a sticker bearing Evidence Seal Number 60553 and placed in a narcotics evidence locker for analysis by the department chemist. (Tr.

31–33) Cain also testified that the baggie containing approximately one-half ounce of cocaine purchased by the officers from Rick Evans was placed in an evidence envelope, Evidence Seal Number 60552, and submitted for analysis. (Tr. 33). Jane Bates, Senior Forensic Chemist for the Oklahoma City Police Department, testified that she analyzed the evidence submitted under Seal Number 60553 and it was determined to be 280 milligrams of a controlled dangerous substance contained in a small bottle or glass vial, admitted as State's Exhibit Number 13; one baggie with a trace amount of cocaine, State's Exhibit Number 11; and one baggie containing six (6) grams of a white powder which was not a controlled dangerous substance, State's Exhibit Number 12. (Tr. 98–100) She also analyzed the evidence submitted under Evidence Seal Number 60552 and determined it to be 13.5 grams of a controlled dangerous substance. This was admitted as State's Exhibit Number 7. (Tr. 93) Bates further testified that there was a second item in the envelope containing Evidence Seal Number 60552, a baggie containing one half gram of a controlled dangerous substance. (Tr. 92, 94) This was admitted as State's Exhibit Number 8. Defense counsel objected to the admission of Exhibit Number 8, arguing that it had not been shown to have come from the Appellant. The trial court overruled the objection and admitted the evidence. (Tr. 94–96) We find that this evidence was improperly admitted as the State failed to lay a proper foundation for its introduction. Our review of the record reveals no testimony concerning the origin of the baggie containing one half gram of the white powder. Further, all of the items seized from Appellant's car were labeled and placed into an envelope bearing Evidence Seal Number 60553. (State's Exhibit No. 16). The evidence taken from Rick Evans was labeled and placed into the envelope bearing Evidence Seal number 60552 (State's Exhibit Number 15). The half gram of cocaine is not mentioned until its introduction as State's Exhibit Number 8 and then it is only a statement of the Assistant District Attorney identifying it as having come

from the Appellant. While finding State's Exhibit Number 8 to have been improperly admitted, we do not find this to be reversible error. The record shows that the State laid a sufficient foundation for the admission of all other exhibits. There was no break in the chain of custody and there is no indication that any tampering of the evidence occurred. Further, the evidence was cumulative and the properly admitted evidence was overwhelming. Accordingly, this allegation of error is denied.

■■■ Appellant further argues that insufficient evidence was presented to sustain a conviction for Possession of Cocaine. We disagree with Appellant and find that the introduction of the cocaine.found in his pocket was sufficient to sustain the present conviction. *Fisher v. State*, 668 P.2d 1152, 1156 (Okl.Cr.1983).

■■■ Appellant next challenges the jury instructions, arguing that the trial court erred by failing to give instructions for any lesser included offenses of possession of a weapon while committing a felony. Initially we note that Appellant's failure to object or offer written requested instructions as to lesser included offenses results in a waiver where the trial court's instructions accurately state the applicable law. *Russell v. State*, 763 P.2d 1180, 1181 (Okl.Cr.1988). Reviewing the instructions for fundamental error, we find that the instructions adequately stated the applicable law. An instruction concerning an included offense is not necessary when the facts do not justify it. *Ross v. State*, 717 P.2d 117, 121 (Okl.Cr.1986). The facts in the present case warranted only an instruction on possession of a firearm while committing a felony. Accordingly, this assignment of error is denied.

■■■ In his seventh assignment of error, Appellant contends that the trial court improperly instructed the jury that Hugh Sprague was a co-conspirator. We disagree. When the acts and conduct of a witness are admitted, it becomes a question of law for the court to decide whether or not those acts make the witness an accomplice. *Frye v. State*, 606 P.2d 599, 606 (Okl.Cr.1980). The test to determine whether a witness is an accomplice is whether he could be indicted for the offense for which the accused is being tried. *Mills v. State*, 737 P.2d 573, 574 (Okl.Cr. 1987). Hugh Sprague testified that he was originally charged with Conspiracy to Distribute Cocaine and plead guilty to the charge, receiving a two (2) year deferred sentence. (Tr. 83) Therefore, the court properly instructed the jury that Sprague was a co-conspirator. Contrary to Appellant's argument, this instruction did not direct a verdict of guilt against Appellant. A complete reading of Instruction No. 14 indicates instructions to the jury that the defendant cannot be convicted by the testimony of such witness unless it is found that his testimony is corroborated, that corroborating evidence must connect the defendant with the unlawful agreement and that it need not be direct, but may be entirely circumstantial. The instruction further informed the jury how to determine whether the testimony of the co-conspirator has been corroborated and what weight to give his testimony if it is corroborated. (O.R. 81) Finding that the jury was properly instructed on the consideration to be given Sprague's testimony, this allegation of error is denied.

■■■ In his eighth assignment of error, Appellant alleges that the Assistant District Attorney who tried the case, Richard Wintory, should have been disqualified from prosecuting the case as he was a potential witness. The record reveals that Mr. Wintory participated in preparing the application for a search warrant of Hugh Sprague's home, accompanied police officers to Mr. Sprague's home to execute the warrant and participated in the questioning of Sprague. Mr. Wintory was subsequently subpoenaed to testify for the defense. Defense counsel objected to Mr. Wintory's prosecution of the case at preliminary hearing and at trial. However, at trial Mr. Wintory was not called to testify.

■■■ The role of advocate and witness should be kept separated, and an advocate should be called as a witness only in circumstances of the utmost necessity. *Ca-*

*vaness v. State*, 581 P.2d 475, 478 (Okl.Cr. 1978). Evidence given by a prosecutor could easily carry more weight with a jury than the evidence of other witnesses. *Brown v. State*, 506 P.2d 1396, 1399 (Okl. Cr.1973). The line between advocate and witness was not crossed in the instant case as the assistant district attorney did not testify. Further, the absence of his testimony did not prejudice the Appellant. Appellant states that the purpose in seeking the prosecutor's testimony was to challenge the probable cause to arrest. The record reflects that defense counsel thoroughly cross-examined Detective Cain concerning the origin and extent of the information he possessed and relied on to effect a warrantless arrest of Appellant. Mr. Wintory's testimony would at best be merely cumulative. Therefore, this assignment of error is denied.

Appellant further challenges the legality of his warrantless arrest for lack of probable cause. Title 22 O.S.Supp. 1982, § 196, subd. 3 provides that "[a] peace officer may, without a warrant, arrest a person ... when a felony has in fact been committed, and he has reasonable cause for believing the person arrested to have committed it." A police officer may make a warrantless arrest of a person if the officer has probable cause to believe that the arrestee has committed a felony. *Johnson v. State*, 665 P.2d 815, 818 (Okl. Cr.1982). If at the time of arrest the facts and circumstances within the arresting officer's knowledge and of which he had reasonable trustworthy information were sufficient to warrant a prudent man in believing that an offense had been or was being committed, probable cause is established and the arrest is lawful. *Beck v. Ohio*, 379 U.S. 89, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964).

During an interview with Detective Cain, Hugh Sprague named Appellant as his supplier of the cocaine previously sold by Evans and Roberts to the police officers. Sprague not only named Appellant but provided a description of him and the vehicle he was driving and possible locations where Appellant could be found that evening. We find that Detective Cain possessed adequate probable cause to arrest Appellant.

Further, the initial search of the Appellant and his vehicle was proper since it was made incident to a valid custodial arrest. *King v. State*, 562 P.2d 902, 904 (Okl.Cr.1977). In *Mahan v. State*, 508 P.2d 703, 707 (Okl.Cr.1973) this Court held that where a person is legally arrested for an offense, without a warrant, whatever is found upon his person or within his control may be seized and held for evidence in the prosecution. The court further stated that the officer may lawfully search the person and the immediate surroundings of the accused for the fruits of the crime or to secure evidence which might have been used in the perpetration of the alleged crime. A warrantless search of an automobile is also valid if the officer has probable cause to believe there is contraband somewhere in the car; and even though he does not know exactly where the contraband is located, he may search the entire car as well as any containers found therein. *United States v. Johns*, 469 U.S. 478, 105 S.Ct. 881, 83 L.Ed.2d 890 (1985), *United States v. Ross*, 456 U.S. 798, 102 S.Ct. 2157, 72 L.Ed.2d 572 (1982), *United States v. James*, 496 F.Supp. 284, 287 (W.D.Okl. 1977). Once Detective Cain placed the Appellant under arrest for conspiracy to distribute cocaine and discovered the additional evidence relating to the possession and distribution of drugs, the officers had sufficient probable cause to search the vehicle for evidence pertaining to the distribution of cocaine. The facts of this case are distinguishable from the facts in *Castleberry v. State*, 678 P.2d 720, 724 (Okl.Cr.1984), wherein this court determined that the police officers had probable cause only to believe the contraband was inside containers located in the automobile and not the automobile itself. *Castleberry* adopted the application of *Ross* to the automobile exception to the Fourth Amendment. In this case the officers had probable cause as to the automobile and, therefore, the search was valid under *Ross* and *Castleberry*.

In his final assignment of error, the Appellant contends that the trial court

erred in failing to invoke the rule of sequestration. Title 12 O.S.1981, § 2615 provides in relevant part that "[a]t the request of a party the court shall order witnesses excluded so that they cannot hear the testimony of other witnesses." Appellant requested the rule after the State had called the second of its three witnesses. The trial court denied the request telling Appellant it was too late. In *Kelsey v. State*, 744 P.2d 190, 193 (Okl.Cr.1987) the defense did not request the rule of sequestration until the fourth of six state witnesses. This Court held that the better practice would have been for the trial court to either invoke the rule upon request or grant appropriate exceptions consistent with the exercise of sound discretion. However, as the request of defense counsel was not timely and no showing of prejudice was made, we refused to find reversible error. The rationale of *Kelsey* is applicable to the present case. It would have been better for the trial court to either invoke the rule of sequestration or grant an appropriate exception. However, in light of defense counsel's failure to make a timely request and in the absence of any showing of prejudice by Appellant, we cannot say that reversible error occured. Accordingly, Appellant's contention under this assignment of error is denied. For the foregoing reasons, Appellant's judgment and sentence is AFFIRMED.

LANE, V.P.J. and JOHNSON, J., concur.

BRETT, J., concurs in result.

PARKS, P.J., dissents.

PARKS, Presiding Judge, dissenting:

The search of appellant's car was, as appellant contends in his ninth proposition of error, unreasonable and illegal under the Fourth Amendment to the United States Constitution and under Article 2 Section 30 of the Oklahoma Constitution. The fruits of said search should, therefore, have been suppressed at trial which mandates that the Judgment and Sentence appealed from be reversed.

This Court adheres to the following principles of constitutional law:

"The Fourth Amendment of our federal constitution prohibits unreasonable searches and seizures. Searches conducted outside the judicial process, without prior approval by judge or magistrate, are per se unreasonable under the Fourth Amendment, subject only to a few specifically established and well-delineated exceptions. *Katz v. United States*, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967).

The exceptions are jealously and carefully drawn, and there must be a showing by those who seek exemption that the exigencies of the situation made that course imperative. *Coolidge v. New Hampshire*, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971)."

*Castleberry v. State*, 678 P.2d 720, 722–23 (Okl.Cr.1984), *cert. granted* 469 U.S. 979, 105 S.Ct. 379, 83 L.Ed.2d 315 (1984), *aff'd mem.* 471 U.S. 146, 105 S.Ct. 1859, 85 L.Ed.2d 112 (1985).

The majority states that the *Castleberry* police officers had probable cause only to believe the contraband was inside containers located in the automobile and not the automobile itself. The majority tries to distinguish *Castleberry* by stating that in this case the police officers had probable cause to search appellant's automobile. Not only has the majority misconstrued the finding and holding in *Castleberry*, they have also distorted the facts surrounding appellant's arrest.

In *Castleberry*, the police received a telephone call from an informant who stated that the suspects were staying in a particular motel room, were driving a blue Thunderbird with Florida license plates and were carrying various narcotics in blue suitcases. While waiting outside the motel room and watching a blue Thunderbird with Florida license plates parked nearby, the police saw the suspects exit the motel room and throw blue suitcases into the trunk of the Thunderbird. The police immediately arrested the suspects and searched the Thunderbird and the blue suitcases. The *Castleberry* Court found that

the suitcases should have been detained until a search warrant was obtained and held that the warrantless search of *both the suitcases and the locked car* was a violation of the Fourth Amendment.

In the instant case, there is not one fact in the record to establish probable cause to search appellant's car for contraband. The police had not received information that appellant was dealing drugs or planting bombs from his car. *See United States v. Johns, supra* and *United States v. James, supra* (both cited by majority). The police had not seen appellant put anything in his car under suspicious circumstances. *See United States v. Ross, supra* (cited by majority). Moreover, appellant had not taken any contraband from the drug sale which could have been placed in the car other than the money, and it was found on appellant. Therefore, the search of appellant's car cannot be justified under the probable cause and exigent circumstances exception to the requirement of a search warrant.

The majority also tries to justify the search by citing *King v. State*, 562 P.2d 902, 904 (Okl.Cr.1977), for the proposition that the initial search of appellant and his vehicle was proper since it was made incident to a valid custodial arrest. *King* and the cases cited therein involve inventory searches of vehicles being properly impounded after a valid custodial arrest and are not apposite to justify initial searches made incident to a valid arrest. The majority also cites *Mahan v. State*, 508 P.2d 703, 707 (Okl.Cr.1973), for the proposition that warrantless searches of a legally arrested person and his immediate surroundings are valid to secure fruits of the crime or evidence used to perpetrate the crime. While these propositions are stated in *Mahan*, they are not relevant to the holding therein, and *Mahan* can be factually distinguished from the instant case because all evidence seized and used at trial in *Mahan* was obtained after a search warrant was issued.

Searches made incident to a valid custodial arrest are strictly limited to a search of the arrestee and the area within the arrestee's immediate control, meaning the area from within which an arrestee might gain possession of a weapon or destructible evidence. *Chimel v. California*, 395 U.S. 752, 762–3, 89 S.Ct. 2034, 2040, 23 L.Ed.2d 685 (1969), *reh'g denied* 396 U.S. 869, 90 S.Ct. 36, 24 L.Ed.2d 124 (1969). Appellant had already exited his car when he was arrested. He clearly could not have gained access to items in the car's trunk and there is nothing in the record to indicate he could have gained possession of items in the passenger compartment of the car, especially the glove box. Therefore, the warrantless search of appellant's automobile far exceeded the scope of the search incident to a valid arrest exception to the requirement of a search warrant.

Finally, the search of appellant's car cannot be justified as an inventory search of an automobile that is being properly impounded. Inventory searches must be conducted pursuant to standardized impoundment procedures. *Starks v. State*, 696 P.2d 1041, 1042 (Okl.Cr.1985). *See also Lee v. State*, 628 P.2d 1172 (Okl.Cr.1981), and *Kelly v. State*, 607 P.2d 706 (Okl.Cr. 1980). The only city ordinances contained in the record (O.R. 43,44) allow impoundment only when the vehicle will be left unattended on any street or highway. Appellant's car was in a private parking lot and was not subject to impoundment. *See Lee, supra* and *Kelly, supra*. Therefore, the police had no right to inventory search appellant's car.

Drugs, drug paraphernalia and the weapon were seized during the illegal search of appellant's car. Such evidence was clearly prejudicial to appellant. He could not have been charged with or convicted of Count IV, Possession of a Weapon While Committing a Felony, but for the evidence obtained from the illegal search. Moreover, the illegally seized evidence undoubtedly influenced the jury's consideration of the other counts. Therefore, the Judgment and Sentence must be reversed and the case remanded for a new trial.