**John HONEYCUTT, Appellant,**

v.

**STATE of Oklahoma, Appellee.**

**No. F–88–521.**

Court of Criminal Appeals of Oklahoma.

May 20, 1992.

**996**

Cindy G. Brown, Asst. Appellate Public Defender, Norman, for appellant.

Robert H. Henry, Atty. Gen., Wellon B. Poe, Asst. Atty. Gen., Oklahoma City, for appellee.

## OPINION

JOHNSON, Judge:

John Honeycutt, appellant, was tried by jury for the crime of Second Degree Arson in violation of 21 O.S.1981, § 1402, in Case No. CRF–87–18 in the District Court of Craig County. The jury returned a verdict of guilty and set punishment at twenty (20) years imprisonment. The trial court sentenced appellant accordingly, and ordered him upon release to pay court costs, $100.00 to the victim's compensation fund, and $47,000.00 of restitution to the victim. From this Judgment and Sentence, appellant has perfected this appeal.

On March 13, 1987, between 9:00 and 10:00 p.m., Buck Willis's metal building which contained auto parts caught fire. The warehouse was located approximately one mile outside of Vinita, Oklahoma, on Mr. Willis's property.

Subsequent investigation by the fire department and the Sheriff's office revealed that a hole had been cut into the side of the building and evidence that a flammable liquid had been ignited on the floor. After an anonymous phone tip that implicated the appellant, he was questioned, then later formally charged with the crime of arson.

Other relevant facts will be discussed in the assignments of error to which such facts relate.

Appellant's first assignment of error is that he was denied a fair trial because one of the jurors at his trial was not impartial due to her employment relationship with one of the State's witnesses. Specifically, appellant complains that because Dr. DeHart, a State rebuttal witness, was not endorsed or listed as a witness before voir dire, he was denied an opportunity to have Juror Brown, who was employed by Dr. DeHart, removed for cause or by a preemptory challenge.

■ First, we note that the failure to endorse Dr. DeHart as a witness was not

error because he was solely a rebuttal witness. *Lavicky v. State*, 632 P.2d 1234, 1237 (Okl.Cr.1981). The State was not required to give pretrial notice because the State cannot know with certainty prior to trial what evidence may become relevant for rebuttal. *Freeman v. State*, 681 P.2d 84 (Okl.Cr.1984).

■ Concerning the relationship between Juror Brown and Dr. DeHart, the record shows that the existence of the relationship was revealed during the prosecution's general questioning of the jurors during voir dire in the following conversation:

Q. Now, Mrs. Brown, I got that you were from Vinita, but I failed to get down what your profession is.

A. I work for Vinita Medical Associates.

Q. Dr. DeHart?

A. DeHart, and all of them.

Q. DeHart and Allensworth and so forth. And how long have you been working for them.

A. Almost nine years. (Tr. 22–23)

Appellant relies on *Bass v. State*, 733 P.2d 1340, 1341 (Okl.Cr.1987), for the assertion that his knowledge of the relationship did not constitute a waiver of error and that he was denied a fair and impartial trial. In *Bass*, during voir dire, a list of the State's witnesses was read from the Information and defense counsel asked the veniremen whether they knew of any person on the list and received negative responses. *Id.* at 1340. After the jury was selected and sworn in, one of the jurors realized he did know one of the witnesses, as he was his sister's fiance. *Id.* This court held that the defendant was effectively deprived of an opportunity to fully explore this area as a potential foundation for a challenge for cause. *Id.* at 1342. Additionally, we noted that at the very least, he was deprived of knowledge in which he could have intelligently exercised a preemptory challenge. *Id.* at 1342. We found this deprivation to be a denial of appellant's right to a fair and impartial jury. *Id.* at 1341.

In *Bass*, we stated that for this type of error to be reversible, the appellant must establish error plus injury and show that he was prejudiced by the error. *Id.* at 1341. We found the error to be reversible because defense counsel was not informed of the relationship after he had specifically inquired about the relationship between veniremen and the witnesses. *Id.* at 1341–42.

We find the present case distinguishable from *Bass*. Appellant premises his argument on the assumption that he had no idea who Dr. DeHart was. In fact, the record reveals that Dr. DeHart was the doctor who had examined appellant's burns. We find appellant was not deprived of the knowledge necessary to effectuate a challenge for cause or a preemptory challenge.

■ Additionally, we find appellant's knowledge waived his challenge to Juror Brown. The right to challenge a juror may be waived and if a defendant had knowledge of the disqualification of a juror it can be held that he waived the objection. *Manuel v. State*, 541 P.2d 233, 236 (Okl.Cr. 1975); *see also Peters v. State*, 712 P.2d 799, 801 (Okl.Cr.1986).

We find additional support for this waiver in the fact that appellant did not object to Dr. DeHart's testimony when he was called. Furthermore, Juror Brown unequivocally indicated that she could sit as an impartial juror regardless of her employee relationship with Dr. DeHart. (Tr. 23) Indeed, Juror Brown did not work personally for Dr. DeHart, but rather worked for a group of doctors. Finally, we note that Dr. DeHart was called only to respond to appellant's testimony about how he had received his burns.

■ Our holding today does not change the general rule that close personal relationships between jurors and individual's associated with the prosecution, either directly or indirectly or through his employer, may be grounds for cause. *Hawkins v. State*, 717 P.2d 1156, 1157 (Okl.Cr.1986); *accord Manual v. State*, 541 P.2d 233 (Okl. Cr.1975); *Thompson v. State*, 519 P.2d 538 (Okl.Cr.1974); *cf.* 22 O.S.1981, § 659; *Roubideaux v. State*, 707 P.2d 35 (Okl.Cr.1985) (Brett, J., specially concurring). Rather, it is only in the facts and circumstances of

this case that we find no error. This assignment is denied.

In his second proposition of error, appellant asserts that the trial court erred when it refused his requested instructions on the statutory requirement of independent corroboration for accomplice testimony. *See* 22 O.S.1981, § 742. He claims that: (1) the determination of whether witness Harold Ironside was an accomplice whose testimony had to be corroborated was a determination for the jury; and (2) he suffered prejudice because if the jury had been properly instructed, it could have determined that Ironside committed the fire rather than him.

■ The trial court refused to give accomplice instructions ruling that as a matter of law, the evidence showed that Harold Ironside did not participate, aid or abet the defendant, but was merely present. (Tr. 396–397) When the acts and conduct of a witness are admitted, it becomes a question of law for the court to decide whether or not those acts make the witness an accomplice. *Davis v. State*, 792 P.2d 76, 83 (Okl.Cr.1990), *quoting Frye v. State*, 606 P.2d 599, 606 (Okl.Cr.1980). The test to determine whether a witness is an accomplice is whether he could be indicted for the offense for which the accused is being tried. *Davis* at 83.

In *Nunley v. State*, 601 P.2d 459 (Okl.Cr. 1979), we stated:

If the evidence is uncontroverted and it establishes that the witness is an accomplice, the trial judge must rule as a matter of law that the witness is an accomplice and instruct the jury that his testimony requires corroboration. *Id.* at 462. Likewise, if the undisputed evidence indicates that the connection of the witness with the crime was innocent and lacking in criminal intent, or that he merely had knowledge and therefore· is not an accomplice, the trial judge must also rule as a matter of law that the witness is not an accomplice. *Id.* at 462–463. Only if the evidence is susceptible to alternative findings that the witness is or is not an accomplice, is the issue a question of fact which must be submitted with proper instructions to the jury. *Id.* at 463.

In this case, appellant was convicted of the crime of Second Degree Arson in violation of 21 O.S.1981, § 1402, which states:

Any person who willfully and maliciously sets fire to or burns or by the use of any explosive device or substance destroys in whole or in part, or causes to be burned or destroyed, or aids, counsels or procures the burning or destruction .of any uninhabited or unoccupied building or structure or contents thereof, whether the property of himself or another, shall be guilty of ...

■ The record reveals that on March 13, 1987, several hours before the fire, appellant and Ironside were at Todd Fair's mechanic shop. At approximately 5:00 p.m., Ironside, appellant and several others started drinking whiskey. Ironside and appellant alternated between drinking at the shop and the next-door neighbor's house. Somewhere between 9:00 and 10:00 p.m., Ironside, as a passenger in appellant's truck, accompanied appellant to an auto parts store where appellant picked up a gas can. Appellant told Ironside he was going to burn down a building and offered Ironside one hundred dollars ($100.00) to help. Ironside testified that he turned down the offer. Appellant then drove the truck to a road near Mr. Willis's building and parked. While Ironside stayed in the truck and watched, appellant got out of the truck, taking the gas can and a machete and walked toward the building.

Ironside testified that he waited in the truck for about thirty minutes when he heard and saw an explosion from the building. After the explosion, appellant came back to the truck with the gas can and machete; he also testified that his face and clothes were burnt. Appellant and Ironside left and appellant dropped Ironside off in town.

This uncontroverted evidence shows that Ironside had knowledge of what appellant said he was going to do, but does not show that he aided or abetted appellant in the commission of the crime. Ironside could not have been prosecuted under 21 O.S.

1981, § 1402. The most the evidence shows is that Ironside was an accessory after the fact as defined by 21 O.S.1981, § 173. We have repeatedly held that accessory testimony does not require corroboration. *See Faulkner v. State,* 646 P.2d 1304, 1308 (Okl.Cr.1982); *Smith v. State,* 727 P.2d 1366, 1371 (Okl.Cr.1986). The trial court was correct in ruling that Ironside was not an accomplice as a matter of law.

In his third proposition appellant asserts that the trial court committed fundamental error by failing to instruct on his alibi defense theory. We first observe that appellant failed to object to the instructions given and further failed to request an alibi instruction; thus, all but fundamental error has been waived. *James v. State,* 731 P.2d 1384, 1387 (Okl.Cr.1987). Failure to give such an instruction will only be considered fundamental error when the testimony establishes that the defendant could not have been at the scene of the crime when it was committed. *Trissell v. State,* 737 P.2d 1228 (Okl.Cr.1987); *accord Pierce v. State,* 786 P.2d 1255, 1266 (Okl.Cr.1990).

Appellant testified that he did not leave Todd Fair's mechanic shop and received his burns while working on the carburetor of his truck. He claims Todd Fair's testimony provided an alibi. Fair's testimony revealed that he saw appellant after he was burnt and that appellant told him the burns were caused by carburetor flashback. However, Fair did not observe appellant working on the truck or being burnt. Further, Fair testified he was busy painting while Ironside and appellant were drinking and did not notice when they came in and out between his shop and the neighbors. Additionally, as he had the stereo on very loud he could not hear anything. This testimony fails to show that appellant could not have left the shop and gone to the building and set it on fire. This assignment is without merit.

In his fourth proposition, appellant complains that certain comments of the prosecutor denied him a fair trial. Initially, we note that all of the comments of which appellant now complains were not objected to at trial, thereby waiving all but

fundamental error. *Douglas v. State,* 795 P.2d 1070, 1074 (Okl.Cr.1990). After review of the comments, we find them to be reasonable comments on the evidence and within the wide range of argumentation allowed during closing argument.

In his final proposition, appellant raises three issues concerning the order for him to pay restitution of $47,000.00. First, he asserts 22 O.S.Supp.1986, § 991a(B) specifically excludes third time offenders, like himself, from the statutory scheme providing for restitution; therefore, the trial court abused his discretion in ordering him to pay restitution. Section 991a(B) states:

B. When sentencing a person convicted of a crime, the court shall first consider a program of restitution for the victim, as well as imposition of a fine or incarceration of the offender. The provisions of paragraph 1 of subsection A of this section shall not apply to defendants being sentenced upon their third or subsequent to their third conviction of a felony.

Section 991a(A)(1) gives a court the power to suspend a sentence in whole or part, with or without probation. 22 O.S.Supp. 1986, § 991a(A)(1); *Haynes v. State,* 760 P.2d 829, 832 (Okl.Cr.1988). Additionally, the court may order or condition the suspension on one of the six options provided in clauses a through f, one of which is restitution. 22 O.S.Supp.1986, § 991a(A)(1)(a-f).

Appellant argues Section 991a(B)'s prohibition of application of Section 991a(A)(1) to habitual offenders prohibits the ordering of restitution as well as suspended sentences for habitual offenders. *See Lee v. State,* 738 P.2d 173, 177 (Okl.Cr. 1987). This argument ignores the clear language of 22 O.S.Supp.1986, § 991a(A)(3), which gives a court the power to:

commit such person for confinement provided for by law with or without restitution as provided for in this section. (emphasis added)

The section to which 991a(A)(3) refers is the whole of section A. Thus, this provision allows an ordering of incarceration

and restitution as provided for in Section 991a(A)(1)(a).

Additionally, this interpretation follows the legislative intent. It is clear that the purpose behind Section 991a(B) was to prohibit a third time habitual offender from being able to receive a suspended sentence. We find no intent to only allow a court the option of having first or second time offenders pay restitution, but not third time offenders. Indeed, Section 991a(B) directs a court to first consider a program of restitution for the victim. 22 O.S.Supp.1986, § 991a(B). (emphasis added) This unequivocally reflects an intent to make compensation to victims a priority. Thus, we find the ordering of restitution was proper pursuant to 22 O.S.Supp.1986, § 991a(A)(3), and trial court did not abuse his discretion in ordering appellant to pay restitution.

■ Second, appellant argues the trial court abused his discretion in ordering him to pay $47,000.00 in restitution because he is an indigent. In *Jones v. State*, 682 P.2d 757, 759 (Okl.Cr.1984), the appellant argued that his assessment to pay the victim's compensation fund was improper because he was indigent. We held that the issue was not ripe and prematurely raised because the assessment was not due until the appellant was released from custody. *Id. See also McDonald v. State*, 764 P.2d 202, 206 (Okl.Cr.1988). Likewise, in the instant case, the restitution is not due until appellant is released from custody and is then due at the rate of $100.00 per month. (Tr. 473) Thus, we will not address this issue at this time.

Finally, appellant asserts that the restitution order was not supported by sufficient proof, as there was no documentation as to the victim's actual loss. Instead, he argues the amount set was arbitrary and unreasonable. Specifically, appellant asserts the restitution order is violative of 22 O.S.Supp.1986, § 991a(A)(1)(a), which only allows restitution if the extent of the damage to the victim is determinable with reasonable certainty.

■ Like all of the options under Section 991a, the decision to order restitution is within the trial judge's total discretion. 22 O.S.Supp.1986, § 991a(A)(1). The restitution provision is for the trial judge and not the jury but comes after the jury renders a verdict. But, this power is not without limits. The legislature mandated that the trial judge make two determinations before ordering restitution. First, the judge must determine whether the restitution can be paid without imposing manifest hardship on the defendant or his immediate family. Second, the extent of the damage to the victim must be determinable with reasonable certainty. 22 O.S.Supp. 1986, § 991a(A)(1)(a).

■ In this case, the issue is whether the trial judge had sufficient evidence to determine the victim's loss with a reasonable certainty. Certainty is defined as freedom from doubt, or a clearly established fact. WEBSTER'S II DICTIONARY (1988) Thus, a reasonable certainty is more than an approximation, estimate or guess. *See Crouch v. State*, 744 P.2d 971, 973–974 (Okl.Cr.1987).

■ Inherent in the definition of reasonable certainty is the requirement of proof of a victim's loss. The record must reflect a basis for the trial judge's determination of a victim's loss or the decision is arbitrary and violative of Section 991a.

■ To clarify this matter, and to provide guidance to trial courts, we find that such determination should be shown by a preponderance of the evidence. This standard does not dictate a certain amount or type of evidence, or that the evidence be corroborated, but rather the focus is on whether the testimony contains inherent improbabilities or contradictions, which alone, or in connection with other circumstances in evidence, justify an inference that the amount is or is not the actual amount of a victim's loss.

■ Additionally, the trial court should hold a hearing in which the State and the defendant have an opportunity to present evidence of the victim's loss and the hardship to the defendant and his family.

■ The purpose of restitution is to compensate a victim for their actual loss,

not to provide a windfall. The legislature in requiring the amount to determinable by a reasonable certainty sought to prevent windfalls and the use of restitution as additional punishment for a defendant.

■ In the instant case, the trial judge held a hearing to address the issue of restitution. (Tr. 470). The only evidence presented about the amount of the victim's loss was the prosecutor's statement that he believed the victim's loss was approximately $94,000.00 and that was what he recommended. (Tr. 472) The judge, noting that there was another defendant who had not been tried yet, ordered appellant to pay half of that amount ($47,000.00). (Tr. 473)

The only evidence presented at trial concerning the amount of the loss was the victim's testimony. The victim testified that the value of his building and inventory was $94,480.82 (Tr. 216), and he had only received approximately $7,700.00 in insurance benefits for his personal property that was stored in the building because the building and inventory were uninsured. (Tr. 215)

Although uncontroverted, we find this evidence to be against the preponderance of the evidence. The evidence is full of improbabilities and contradictions and does not support an inference that $47,000 is within a reasonable certainty the amount of the victim's loss. We agree with appellant that the victim's loss was not determined with reasonable certainty and was arbitrary and find that the trial judge abused his discretion.

Therefore, we AFFIRM the judgment, but VACATE the order of restitution and REMAND the issue of the amount of the victim's loss to the trial court for proper determination in accordance with this opinion.

LANE, P.J., concurs.

BRETT and PARKS, JJ., concur in result.

LUMPKIN, V.P.J., concurs in part, dissents in part.

LUMPKIN, Vice Presiding Judge, concurring in part, dissenting in part.

I concur in the Court's decision to affirm the judgment and sentence in this case, however, I must dissent to the Court's determination that the record reflects insufficient evidence to support the restitution ordered by the trial court.

The testimony of the victim was never contested or contradicted at preliminary hearing or trial regarding the value of the building and contents. The rule we must follow in determining the sufficiency of the evidence is whether, after reviewing the evidence in the light most favorable to the State, any trier of fact could have reached the same conclusion beyond a reasonable doubt. See Drew v. State, 771 P.2d 224, 227 (Okl.Cr.1989); Spuehler v. State, 709 P.2d 202 (Okl.Cr.1985). This Court has never stated that the testimony of a victim as to the value of his own property is not sufficient to support a determination of value. Especially when the defendant never contests the value. This Court has never set forth a clear rule as to what quantum and quality of proof would be required in a case like this, except that damages to the victim must be determinable with reasonable certainty. See Crouch v. State, 744 P.2d 971, 973-974 (Okl.Cr.1987). This general rule of proof has been established by the uncontradicted facts presented to the trial court. Therefore, this Court is without authority to interfere with the findings of the trial court. I must therefore dissent to the Court's determination that the evidence does not support the finding of the trial court as to the assessment of restitution.

PARKS, Judge, concurring in result:

I concur in the results reached by the majority, but am compelled to remark upon the prosecutor's improper comments. First, it was error for the trial court to admit such statements which intrude upon the jury's responsibility to determine the credibility of witnesses. The ABA Standards for Criminal Justice, adopted by this Court in Tart v. State, 634 P.2d 750 (Okl.Cr.1981), provide that it shall be un-

professional conduct for a prosecutor to "express his personal belief or opinion as to the truth or falsity of any testimony or evidence of the guilt of the defendant." ABA *Standards,* § 5–8(c). In this case, the prosecutor expressed his personal belief as to the truth of the State's witness's testimony and the falsity of the appellant's. The prosecutor said "she (state's witness) is not lying to you," and "what reason does she have to lie?" (Tr. 406). Further, he concluded his closing argument by implying that appellant was a liar. He said "somebody has lied in this case and who has the most to lose?" (Tr. 406). We have repeatedly held that accusing a defendant of lying is improper. *See Cowles v. State,* 636 P.2d 342, 345 (Okl.Cr.1981). *See also Cobbs v. State,* 629 P.2d 368, 369 (Okl.Cr. 1981). However, the whole closing argument was not so fraught with error that it infected the entire proceedings to a point that fundamental fairness was denied. *Compare Ward v. State,* 633 P.2d 757 (Okl. Cr.1981). Therefore, I conclude that the error was not verdict determinative and did not deprive appellant of a substantial right. *See* 20 O.S.1981, § 3001.1.