Robert Ray "Bob" STOKES,
Plaintiff in Error,

v.

STATE of Oklahoma, Defendant in Error.

No. A–13064.

Court of Criminal Appeals of Oklahoma.

Sept. 6, 1961.

Rehearing Denied Oct. 4, 1961.

Second Petition for Rehearing Denied
Nov. 29, 1961.

See, also, 355 P.2d 1005.

Robert Ray "Bob" Stokes, Wewoka, plaintiff in error, pro se.

Mac Q. Williamson, Atty. Gen., Sam H. Lattimore, Asst. Atty. Gen., William Pipkin, County Atty., Seminole County, Wewoka, for defendant in error.

BRETT, Judge.

Plaintiff in error, Robert Ray (Bob) Stokes, hereinafter referred to as defendant, was convicted in the county court of Seminole County on a charge of obtaining services by means of false pretenses. He was tried before a jury, found guilty and his punishment fixed at six months in the county jail, and a fine of $250.

■ This appeal is by transcript and in such case this court is limited to a consideration only of errors appearing on the face of the record, and will not decide questions which cannot be correctly determined without the aid of the testimony. Jenkins v. State, 11 Okl.Cr. 168, 145 P. 500; Dixon v. State, 95 Okl.Cr. 207, 242 P.2d 474; London v. State, Okl.Cr., 297 P.2d 567.

The record discloses that the information was filed in the county court of Seminole County on June 27, 1960. On June 28 defendant appeared in person, was advised of his rights and waived reading of the in-

formation and time to plead, and entered a plea of not guilty. On October 14, 1960, without withdrawing his plea of not guilty, the defendant through his attorney W. B. Ward, Jr., filed a motion to quash the information, which was on October 18 overruled. The case was assigned for trial for April 24, 1961. On April 21, 1961 the defendant filed a motion to disqualify the county judge, and on the same day filed an amended and supplemental motion to disqualify him. The defendant was present on the date the case was set for trial, but his attorney was not, and the case was continued until April 25. On that date the attorney made oral application for permission to withdraw from the case, and such permission was granted. The defendant announced that he did not have an attorney, and did not want the court to appoint one to represent him.

The minutes of the court show that the motions of the defendant to disqualify the judge were overruled on April 25, and the defendant thereupon announced ready for trial. A jury was impaneled and sworn, testimony was introduced by the State, the jury was instructed and thereafter returned a verdict, finding the defendant guilty and fixing his punishment as hereinbefore stated. Proper notice of intention to appeal was given, and on May 2, 1961 defendant filed his motion for new trial, which was on May 3, 1961 overruled.

Defendant, acting as his own attorney, filed his petition in error and a transcript of the proceedings had in the county court in this court, and thereafter filed his brief, orally argued the case before the court, and then filed a reply brief.

In his petition in error defendant sets out 16 grounds for reversal, and in his brief lists 18 grounds for relief. These boil down to four principal complaints—that the information did not charge a public offense and that it is vague, indirect and uncertain and does not allege venue; that the court erred in refusing to disqualify; that the instructions were erroneous; and that the judgment and sentence was excessive.

Defendant was charged under 21 O.S. 1951 § 1541, the charging part of the information reading:

"That at and in the county of Seminole, State of Oklahoma, on or about the 17th day of June, 1960, and prior to the filing of this information, Robert Ray "Bob" Stokes, defendant herein, did then and there willfully, unlawfully, wrongfully, knowingly and designedly, with intent to cheat and defraud, obtain from the Southwestern Bell Telephone Company, a corporation, long-distance telephone service of the value of sixty-seven cents (67¢), said service then and there being a valuable thing, by means and use of false and fraudulent representations, that is to say, that the said defendant, then and there being, did then and there wilfully, wrongfully, unlawfully, knowingly, fraudulently and designedly represent to the agents, servants and employees of the Southwestern Bell Telephone Company, a corporation, that he was authorized and entitled to use a certain credit card No. 148 M–262–3516, of said telephone company, which said representations were false and fraudulent, as he the said Robert Ray "Bob" Stokes then and there well knew, and the said agents, servants and employees of the said Southwestern Bell Telephone Company, a corporation then and there relying on said representations of the said defendant, extended long-distance telephone service to the said defendant, of the value of sixty-seven cents (67¢), and the said Robert Ray "Bob" Stokes did then and there obtain by the use of said false and fraudulent representations as aforesaid, long-distance telephone services of the value of sixty-seven cents (67¢), with the unlawful, willful, wrongful and fraudulent intent then and there on the part of him, the said Robert Ray "Bob" Stokes, to cheat and defraud the said Southwestern Bell Telephone Company, a corporation, out of long-distance telephone services of the

value of sixty-seven cents (67¢), as aforesaid, contrary," etc.

This information alleges intent to cheat and defraud, to obtain a thing of value by means of false pretense and personation, pleading expressly the manner and means in which the crime was committed, by and to whom it was made and naming the party defrauded by reason thereof, all of which acts were allegedly knowingly and falsely done. The information thus pleads in ordinary concise language the essential elements of false pretense within the ambit of the statute, sufficiently to apprise a person of common understanding of what was intended by the charge lodged against him is a protective buttress against subsequent prosecution for the same offense, and is good against attack thereon. 35 C.J.S. False Pretenses §§ 41, 42, 43, pp. 869 to 877; Lazar v. State, Okl.Cr., 275 P.2d 1003, certiorari denied 349 U.S. 902, 75 S.Ct. 581, 99 L.Ed. 1240; Argo v. State, 88 Okl. Cr. 107, 200 P.2d 449.

We note that this defendant might also have been prosecuted for "false personation" under 21 O.S.1951 § 1531, subdivision 4.

Appellant contends that the information does not state a cause of action. He urges that the offense of obtaining services by false pretenses as alleged in the information is not specifically included in 21 O.S.1951 § 1541. Without so saying, we take it he seeks to assert that under the doctrine of ejusdem generis the property obtained by false pretense must fall within the classification of property enumerated in the statute, or be a like thing of value, such as money, or property obtainable by bogus check, under parts of the statute not quoted herein. To so hold would ignore the foregoing plain language of the statute, as above set forth, which states a separate offense, and would overlook the mischief sought to be cured, that of obtaining "any valuable thing" from another by means of deceit and false representation. The legislature did not intend that the term "any valuable thing" to be a meaningless expres-

sion, but instead to be a positive term of definition. The term "any valuable thing" is broad and comprehensive, and, no doubt, was intended as a term of enlargement, and not as a restriction to obtaining personal property by false pretense. State v. Ball, 114 Miss. 505, 75 So. 373–374, L.R.A.1917E, 1046. If the legislature intended the term, as employed, to be limited, it could easily have said, "and like things of value." Woods v. State, 236 Ind. 423, 140 N.E.2d 752, 753. In interpreting a similar statute holding a gun was a valuable thing, that court resorted to the following rules of construction:

"We grant that the case here is a typical one for consideration of the doctrine of ejusdem generis; however, it is not one of mandatory application. In our opinion it is merely one of a number of helpful aids used in the various methods of reaching the meaning intended where vagueness and uncertainty are claimed to exist. As Professor Horack says, 'Fortunately, the maxim of ejusdem generis is not a compelling rule, and as frequently as it is applied it·is ignored or rejected.' * *

"In the process of interpretation the court's main 'rule' should be to use all sources available and relevant to determine how the legislature intended the statute to operate, and not place itself in a straight-jacket [sic] under the guise of intrinsic limitations. 82 C.J.S. Statutes § 332b, p. 662.

"A play may be made here with the words 'any bond, bill, receipt, promissory note, draft, or check, or thing of value', in an attempt to reach a meaning. It might be urged that if the legislature had intended to restrict the meaning of 'or thing of value' it would have done so by using the words 'like things of value'. We are not, however, in statutory construction confined to the four corners of the instrument, so to speak, in search for the correct meaning. We may look outside for any relevant help available. * * * 'Rules'

of interpretation are applicable where uncertainty exists. If rigidly applied they many times cause as much uncertainty as certainty in the law and occasional resulting absurdities in meaning. When the application of a rule reaches freakish or unusual results its usefulness ends."

It was likewise held therein that the term "valuable thing" following specific words, such as checks, etc., is not limited by the rule of ejusdem generis to things of value such as commercial paper, and like intangibles, but is broad enough to cover the procuring by false pretense of other things of value, in that instance, a gun.

We believe section 1541 of Title 21 clearly defines the crime of obtaining any valuable thing by false pretenses. Hence, it becomes immediately apparent the question presented is, does telephone service fall within the definition of a valuable thing, and within the provisions of the statute on false pretense?

Webster's New International Dictionary, second edition, defines in law a "thing" as "whatever may be possessed or owned, or be the object of a right; distinguished from person."

Ballantine's Law Dictionary defines a valuable thing as in the law on larceny as "any tangible thing which the law recognizes as property."

But does the law recognize telephone service or any comparable thing as property? We know of no specific case holding that telephone service, as such, is property. But there are numerous cases holding that electricity is personal property, and as such the subject of larceny. See People v. Menagas, 367 Ill. 330, 11 N.E.2d 403, 406, 113 A.L.R. 1276 (and annotations), where the Supreme Court of Illinois said:

"It [electricity] is property, and is bought and sold in the market as freely as the products of the farm. At common law it could not be the subject of larceny, which must be of goods and chattels, but it is now pro-tected by statute to the same extent as other forms of property, and the unauthorized connection of any gas, water, or electric current with a motor or other appliance is a misdemeanor, punishable by law. * * *

"The true test of what is a proper subject of larceny seems to be not whether the subject is corporeal or incorporeal, but whether it is capable of appropriation by another than the owner. It is well settled that illuminating gas may be the subject of larceny, even in the absence of a statute so providing. * * * Electricity, the same as gas, is a valuable article of merchandise, bought and sold like other personal property and is capable of appropriation by another. * * * While it [electricity] is intangible, it is no less personal property and is within the larceny statute."

In the notes following this case in numerous other cases, power and gas, oil and *water* flowing in pipes have been held personal property, the subject of larceny. See, in this connection, Clark v. State, 14 Okl.Cr. 284, 170 P. 275, L.R.A.1918C, 577.

■ If electricity, gas, water, etc., be personal property, a subject of larceny, by analogy a telephone communication made possible by electrical impulses over the wires carrying the sound of the human voice is the subject of larceny. We see no difference in transmittal of electric current to its destination for lighting, and the transmittal of sound to its destination for hearing. The manifestation of one may be seen and felt, and the other heard. When the use of telephone service is obtained by false personation a charge of obtaining a valuable thing by false pretense will lie under the terms of 21 O.S.1951 § 1541. What the company is really selling is a sound service made possible only through the medium of its electricity. The title to the electric sound reproduction and transmittal passed immediately and voluntarily on the part of the telephone company when the connection was made and the communication

concluded, on the basis of the false personation and pretenses herein made. In Warren v. State, 93 Okl.Cr. 166, 226 P.2d 320, 321, we said:

"If the owner parts with the possession and title, due to the deception and artifice of the taker, then the offense constitutes obtaining property by false pretenses as defined in Title 21 O.S.A. 1941 § 1541, and not larceny by fraud."

Such is clearly the situation here involved.

The telephone company had sustained an irrevocable property loss even though no pecuniary advantage accrued to the defendant. Though the value of the current employed to transmit the message may have been infinitesimally small, that is of no consequence, since the quantity of the property obtained by the false pretense is immaterial, except as it may affect the punishment. Burck v. State, 132 Tex.Cr.R. 628, 106 S.W. 2d 709.

■ To hold under the foregoing statutory definition and rules of interpretation that telephone service is a valuable thing within the provisions of 21 O.S.1951 § 1541 seems to us to be a reasonable interpretation based upon practical aspects of modern usage and customs that make of telephone service an indispensably valuable thing in aid of communication. A thing to be bought and sold as a commodity like electricity, its value fixed at legally established rates, notwithstanding its intangibility. Okl. Const. Art. 9, § 18; Hine v. Wadlington, 26 Okl. 389, 109 P. 301. And the value of a telephone call is not to be measured by its fruits, but by the fact of its use as a means of communication, regardless of the results obtained thereby. This interpretation as applied to telephone service we believe is reasonably within the scope of § 1541, and does not produce uncertainty of the law, or result in an absurdity, but upholds the law as to the deceit sought to be cured.

As to the alleged error of the court in refusing to disqualify, we find that the defendant filed a motion to disqualify the judge, and an amended and supplemental motion on the same day, in which he alleged that he "can not receive a fair and impartial trial by jury due to the bias and prejudice of the county judge"; that the county judge was incompetent; and that in a former case against this defendant in which the jury left the punishment to the court, the judge gave defendant the maximum sentence provided by the statutes.

■ The motion and supplemental motion do not state facts sufficient to entitle the defendant to have the county judge disqualified, and if any evidence was introduced in support of the motions it is not shown in the transcript, and of course we cannot pass upon the same. Prejudice, ill will and hostility towards a defendant on the part of a trial judge must be of such character as to prevent the judge from giving the defendant a fair trial before the same will constitute grounds for disqualification of such judge. Captious and unwarranted accusations of bias should be discouraged. The determination of the judge who will preside at the trial of one accused of crime should not depend upon the whim or trivial accusation of the accused, and the mere fact that the judge assessed the maximum punishment in another case is not sufficient grounds to warrant his disqualification in another case. State ex rel. Vahlberg v. Crismore, 90 Okl.Cr. 244, 213 P.2d 293.

■ The defendant complains that the instructions were confusing and misleading. We have carefully examined the instructions given, and while it is not our purpose to place our stamp of approval upon the instructions as given, as models to be followed in the future where similar circumstances arise in the trial of other cases, we do not see any fundamental error committed in the giving of the instructions to such an extent that this court would be compelled to say that they were so erroneous that the judgment of conviction should be reversed by reason of the giving of such instructions. No objections or exceptions were taken to the instructions, and we have repeatedly held that where no ob-

jection is made or exceptions taken at the time the instructions are given, and said instructions are partially erroneous, the giving of such instruction or instructions is not reversible error, unless some constitutional or express statutory right of the defendant has been invaded. The Court of Criminal Appeals will not examine the instructions given for the purpose of discovering other than fundamental errors. Bashara v. State, 13 Okl.Cr. 304, 164 P. 324; Green v. State, 70 Okl.Cr. 228, 105 P.2d 795.

■ It is the duty of the defendant to call the trial court's attention to alleged errors in instructions in order that the court may have an opportunity to correct them; and, where this is not done, this court has repeatedly held that only such errors in the instructions as directly conflict with the constitutional and plain statutory rights of the defendant will be considered. Bashara v. State, supra.

■ Defendant finally complains that the punishment is excessive and the result of passion and prejudice. The statute under which the defendant was prosecuted (21 O.S.1951 § 1541) fixes the punishment at a fine not to exceed $500, or by imprisonment in the county jail for not more than six months, or by both such fine and imprisonment. Under such statute a sentence of six months in jail and a fine of $250 is not excessive. However, taking into consideration all the circumstances in connection with this case, and the cost of the telephone call involved, and in the interest of justice and fair play, the judgment entered is modified to a fine of $100, and thirty days in the county jail.

As so modified, the judgment and sentence is affirmed.

NIX, P. J., concurs.

BUSSEY, J., not participating.