2010 OK CR 7

Jack Aaron LOGSDON, Appellant

v.

STATE of Oklahoma, Appellee.

No. F–2008–78.

Court of Criminal Appeals of Oklahoma.

April 12, 2010.

As Corrected June 22, 2010.

Mack Martin, Martin Law Office, Oklahoma City, OK, attorney for defendant at trial.

Charles Rogers, Assistant Attorney General, Oklahoma City, OK, attorney for state at trial.

Thomas Purcell, Deputy Appellate Defense Counsel, Oklahoma Indigent Defense System, Norman, OK, attorney for appellant on appeal.

W.A. Drew Edmondson, Oklahoma Attorney General, Keeley Harris, Assistant Attorney General, Oklahoma City, OK, attorneys for appellee on appeal.

A. JOHNSON, Vice Presiding Judge.

¶ 1 Appellant Jack Aaron Logsdon was tried by jury and convicted and sentenced in the District Court of Logan County, Case No. CF–2005–189, of sixteen counts of fraudulent sales of securities, forgery, obtaining money by false pretenses, and racketeering.[1] The Honorable Donald L. Worthington, who presided at trial, ordered that each sentence be served consecutively for a total term of imprisonment of twenty-nine years. Additionally, the district court imposed jury-recommended fines of $3,000 on Counts 13 and 15, and $4,000 on Counts 1, 3, 4, 5, 6, 7, 8, 10, 12, 14 and 16. Further, the district court ordered restitution in the amount of $1,194,238.48. On appeal Logsdon raises the following issues:

(1) whether the evidence was sufficient to support a conviction on Count 17 for racketeering;

(2) whether the jury instructions on the counts alleging fraudulent sales of se-

---

1. The counts of conviction and sentences are as follows:

| Count | Offense | Statute | Sentence |
|---|---|---|---|
| 1 | Fraudulent Sale of a Security | 71 O.S. §§ 101, 407 | 1 year |
| 3 | Fraudulent Sale of a Security | 71 O.S. §§ 101, 407 | 1 year |
| 4 | Fraudulent Sale of a Security | 71 O.S. §§ 101, 407 | 1 year |
| 5 | Fraudulent Sale of a Security | 71 O.S. §§ 101, 407 | 1 year |
| 6 | Fraudulent Sale of a Security | 71 O.S. §§ 101, 407 | 1 year |
| 7 | Fraudulent Sale of a Security | 71 O.S. §§ 101, 407 | 1 year |
| 8 | Fraudulent Sale of a Security | 71 O.S. §§ 101, 407 | 1 year |
| 9 | Forgery in the Second Degree | 21 O.S. § 1585 | 6 months |
| 10 | Fraudulent Sale of a Security | 71 O.S. §§ 101, 407 | 1 year |
| 11 | Forgery in the Second Degree | 21 O.S. § 1585 | 6 months |
| 12 | Fraudulent Sale of a Security | 71 O.S. §§ 101, 407 | 1 year |
| 13 | Obtaining Money by False Pretenses | 21 O.S. §§ 1541.1-1541.2 | 1 year |
| 14 | Fraudulent Sale of a Security | 71 O.S. §§ 101, 407 | 1 year |
| 15 | Obtaining Money by False Pretenses | 21 O.S. §§ 1541.1-1541.2 | 1 year |
| 16 | Fraudulent Sale of a Security | 71 O.S. §§ 101, 407 | 1 year |
| 17 | Racketeering | 22 O.S. § 1403(A) | 15 years |

Logsdon was found not guilty of Fraudulent Sale of a Security in Count 2.

curities were defective for not defining the term "security" as requiring an investment of money in the risk capital of a business;

(3) whether the trial court committed reversible error by allowing the jury to separate for the evening after they had retired for deliberations;

(4) whether the trial court's restitution order must be vacated because the statutory procedure for determining the amount of restitution was not followed and because the amount of the victims' loss was not determined with reasonable certainty;

(5) whether the evidence was sufficient to support conviction on Count 1 for the fraudulent sale of a security;

(6) whether his convictions on Counts 9, 10, 11, and 12, for fraudulent sales of securities and second degree forgery, violate statutory prohibitions against multiple punishment or violate constitutional prohibitions against double jeopardy;

(7) whether the evidence was sufficient to support the conviction in Count 13 for obtaining money or other valuable thing by false pretenses;

(8) whether the trial court abused its discretion by running all his sentences consecutively;

(9) whether his fifteen year sentence on Count 17 for racketeering should be modified because the jury was not instructed that he would be required to serve 50% of his sentence before becoming eligible for early release from confinement;

(10) whether his conviction for racketeering in Count 17, which incorporated the crimes alleged in Counts 1 through 16, violates constitutional and statutory prohibitions against multiple punishment and double jeopardy;

(11) whether the trial court committed reversible error by allowing inadmissible hearsay into evidence;

(12) whether the prosecutor engaged in misconduct by raising the prohibited "societal alarm" argument during closing argument;

(13) whether the trial court committed reversible error by allowing inadmissible evidence of other crimes into evidence; and

(14) whether he was denied a fair trial by the cumulative effect of multiple errors and irregularities during trial.

¶2 We find reversal is not required and affirm the convictions and sentences on all counts except Count 17. We affirm the conviction on Count 17, but modify the sentence from a term of imprisonment of fifteen years to a term of imprisonment of ten years.

¶3 For the reasons set out below, we vacate the district court's restitution order and remand for a re-determination of the restitution amount.

## BACKGROUND

¶4 Logsdon operated cattle and cattle investment businesses in Logan County. He also owned a travel enterprise that consisted of several different business entities, and dealt in real estate. The charging information alleged, and the State was required to prove at trial, that Logsdon:

(1) engaged in fraudulent sales of securities by selling investment contracts for interests in cattle that did not exist and by selling investment contracts for ownership interests in his various travel enterprises that were already held by other investors;

(2) forged two cattle sale option contracts;

(3) obtained money by false pretenses by causing one investor to pay another investor for purchasing cattle, but in reality the investor was paying off part of Logsdon's fraudulent debt to the other investor; and

(4) engaged in racketeering by using the facilities of his existing cattle and travel business operations to conduct the alleged criminal activities.

Because the crimes charged in this case involved multiple schemes, seventeen separate crimes, and at least a dozen victims, the relevant facts will be discussed as they pertain to each individual claim of error.

## DISCUSSION

### 1.

### Sufficiency of the Evidence

### Racketeering

### (Count 17)

■ ¶ 5 The evidence was sufficient to support a conviction for racketeering in Count 17 because when the evidence is viewed in the light most favorable to the State, any rational trier of fact could have found the essential elements of the crime charged beyond a reasonable doubt. *Spuehler v. State*, 1985 OK CR 132, ¶ 7, 709 P.2d 202, 203–04 (quoting *Jackson v. Virginia*, 443 U.S. 307, 316, 99 S.Ct. 2781, 2787, 61 L.Ed.2d 560 (1979)). Specifically, the evidence was sufficient to prove both the existence of an enterprise and Logsdon's participation in its affairs through a connected pattern of racketeering activity. *Miskovsky v. State*, 2001 OK CR 26, ¶ 5, 31 P.3d 1054, 1059.

### 2.

### Jury Instruction

### Fraudulent Sale of Security

### (Counts 1, 3, 4, 5, 6, 7, 8, 10, 12, 14, 16)

■ ¶ 6 The district court's jury instruction, which omitted a definition of the term "security" as a contribution to the risk capital of a venture, was proper. With one exception, the evidence showed that all the securities alleged to have been fraudulently sold were investment contracts, not contributions to the risk capital of a venture. Therefore, because the trial court defined the term "investment contract" in its instructions to the jury, and because the instruction tracked the statutory language, it correctly stated the applicable law and no instruction on contribution to risk capital was required.[2] *Cleary v. State*, 1997 OK CR 35, ¶ 25, 942 P.2d 736, 745 ("Jury instructions are sufficient if, as a whole, they properly instruct the jury."). There is no plain error here. *Hogan v. State*, 2006 OK CR 19, ¶¶ 39, 44, 139 P.3d 907, 923, 925, *rehearing granted*, 2006 OK CR 27, 139 P.3d 907, 952.

### 3.

### Jury Separation

■ ¶ 7 Without objection by counsel, the trial court judge permitted jurors to go home for the evening while they were still deliberating despite the requirement of 22 O.S.2001, § 857 that jurors be kept together until they have agreed on a verdict. Prior to the jury's separation for the evening, however, the judge admonished jurors not to discuss the case with anyone. Logsdon points to nothing in the record and offers no evidence suggesting that any juror discussed the case with anyone or was in any way subjected to any improper influence while at home for the evening. Allowing this jury to separate for the evening was not reversible error. See *Day v. State*, 1989 OK CR 83, ¶¶ 15–16, 784

---

2. Count 7 did not allege the sale of an investment contract, but instead alleged the fraudulent sale of a "note or evidence of indebtedness." The judge did not define the terms "note" or "evidence of indebtedness." Nevertheless, a definitional instruction was unnecessary for these terms, because the terms "note" and "evidence of indebtedness" are not specialized terms and could be easily understood by jurors particularly where the evidence showed that the item at issue was a promissory note, an item with which most jurors likely have some experience. *See Oxley v. State*, 1997 OK CR 32, ¶ 10, 941 P.2d 520, 523, ("[T]erms used in instructions should be defined by the court where they have a technical meaning, or may be misapplied by the jury; but where the terms are in common use and are such as can be understood by a person of ordinary intelligence they need not be defined or explained in the absence of anything in the charge to obscure their meaning."). Because this count did not allege a money contribution to the risk capital of a venture, but instead alleged the sale of a type of security that was familiar to jurors, no special instruction was necessary.

P.2d 79, 84 (finding no prejudice to defendant for evening separation of jury where counsel did not object, judge admonished jury, and there was no evidence jurors did not follow admonishment); *Elliott v. State*, 1988 OK CR 81, ¶ 15, 753 P.2d 920, 922–23 (finding that when jury is allowed to separate in violation of section 857, and counsel for both sides are present, failure to object waives any potential error caused by separation).

### 4.

### Restitution

 ¶ 8 Logsdon claims that the trial court's restitution order must be vacated because the statutory procedure for determining the amount of restitution was not followed and because the amount of the victims' loss was not determined with reasonable certainty. The State argues that although it did not follow the procedure for prosecuting a restitution claim set out in 22 O.S.2001, § 991f (E)(1)-(4), there was sufficient evidence presented at trial to support the $1,194,238.48 restitution amount determined by the district court. This Court reviews the calculation of a restitution award for an abuse of discretion. *Honeycutt v. State*, 1992 OK CR 36, ¶ 28, 834 P.2d 993, 1000.

 ¶ 9 Title *22 O.S.2001, § 991a* (A)(1)(a) provides that restitution may be ordered only to the extent that the damage to the victim is determined with "reasonable certainty." A "reasonable certainty" must be more than an approximation, estimate, or guess. *Honeycutt*, 1992 OK CR 36, ¶ 31, 834 P.2d at 1000. Inherent in the definition of reasonable certainty is the requirement of proof of the loss to the victim. *Id.* Further, unless the record reflects a basis for the trial judge's determination of a victim's loss, the decision is arbitrary and violates section 991a. *Id.*, ¶ 33, 834 P.2d at 1000.

¶ 10 Title 22 O.S.2001, § 991f (A)(1) provides that a crime victim may be compensated by "restitution" for up to three times the amount of economic loss suffered by the victim as a direct result of the criminal act of the defendant. "Economic loss" includes the actual financial detriment suffered by the victim and may include such things as medical expenses, damage to or loss of real or personal property, and loss of earnings reasonably incurred as a direct result of the defendant's criminal act. 22 O.S.2001, § 991f (A)(3). Title 22 O.S.2001, 991f (E)(3) requires that the district attorney "shall" provide all crime victims with an "official" restitution request form which the victim must then submit along with all invoices, bills, receipts, and other evidence of injury, loss of earnings, and out-of-pocket loss. Section 991f(F) requires that the crime victim "*shall* provide all documentation and evidence of compensation or reimbursement from insurance companies or agencies of this state, any other state, or the federal government received as a direct result of the crime for injury, loss of earnings or out-of-pocket loss" (emphasis added). The provisions of section 991f(E)(3) and (4) require that the victim's restitution request form "*shall* be filed with any victim impact statement to be included in the judgment and sentence" and that "[t]he official restitution request form *shall* be presented in all cases regardless of whether the case is brought to trial" (emphasis added). Section 991f(E)(1) directs that "[t]he district attorney's office shall present the crime victim's restitution claim to the court at the time of the conviction or at the time of a plea." And finally, section 991f(D) states that:

> If restitution is to more than one person, agency or entity is set at the same time, the court *shall* establish the following priorities of payment:
>
> 1. The crime victim or victims; and
>
> 2. Any other government agency which has provided reimbursement to the victim as a result of the offender's criminal conduct.

(Emphasis added).

 ¶ 11 The State contends that it was not necessary to follow section 991f at sentencing because the amount of the victims' loss had been proved at trial through testi-

mony and through evidence such as checks, promissory notes and deposit slips that documented the victims' payments *to* Logsdon. The problem with this argument is that while there is evidence in the trial record showing that some victims made payments *to* Logsdon, there is also evidence that some victims received payments *from* Logsdon. There is no record that the trial court considered any payments received by victims from Logsdon, · or any other compensation that victims may have received from other sources, in determining the $1,194,238.48 restitution amount. Furthermore, the district court ordered restitution in the amount of $1,194,238.48, but despite the fact that the charging Information named at least thirteen victims,[3] neither the Judgment nor its attachment identifies any specific victims as eligible for restitution, nor does either establish priorities for payment among them.[4] Furthermore, there is no record of what the State actually presented to the district court as its claim for victim restitution. The transcript of the sentencing hearing shows that the prosecutor provided the court with a "calculation" of what he believed the victims' losses to be (Sent. Tr. 5), and the State asserts that this "calculation" constituted the victims' claim for restitution. The transcript is silent, however, about the specifics of the "calculation," and there is no written version of the "calculation" in the record.

¶ 12 Although nothing in section 991f indicates that its procedural requirements do not apply when some evidence of victim loss is presented at trial as the State asserts, even assuming this assertion is correct, the trial record in this case is not adequate to allow this Court to make a finding that the total restitution amount listed in the Judgment was correctly calculated to a "reasonable certainty." The provisions of section 991f(A)(1), (3), and (C)(2) limit the economic loss subject to a restitution award to a victim's "actual financial detriment," up to three times the amount suffered as a "direct result of the criminal act of the defendant."[5] Merely totaling up payments made to Logsdon as the State proposes, without identifying which payments were being used, or accounting for anything that Logsdon may have returned to the victims, or for any compensation that victims may have received from other sources (*e.g.*, insurance, civil judgments, etc.), does not produce the accurate measure of a victim's "actual financial detriment" contemplated by 22 O.S.2001, § 991f (A)(3). Nor does it explain whether any excess amount of restitution was allowed. *See* 22 O.S.2001, § 991f (A)(1) and (C)(2).

¶ 13 In short, this record shows only a grand total restitution amount. It does not identify the victims to whom. restitution is owed, 22 O.S.2001, § 991a (A)(1)(a), (F), § 991f(D)(1); it does not show the basis for any individual claim, 22 O.S.2001, § 991f (E)(1), (E)(4) or (F), nor does it provide any indication of whether the restitution award reflects the victims' "actual loss" by accounting for any compensation received by the victims from other sources, including restitution or compensation orders that may have been imposed in other criminal or civil proceedings, 22 O.S.2001, § 991f (A)(3), (C)(3)(e), (F).[6] Because the record does not reflect a

---

**3.** In its various counts, the charging Information lists the following victims of Logsdon's multiple overlapping schemes: Gene Stephenson, Fred Moulder, John Macy, Carolyn Macy, Terry White, Robert Donaldson, Joy Donaldson, Charles Crooks, Angie Crooks, Jon Gumerson, James Clark, Gene Stephenson Shocker Baseball Camps, Inc., and First Capital Bank (O.R. 108–119). Not all these victims testified at trial.

**4.** Attachment A to the Judgment purports to state a "Schedule of Reimbursement" of court costs, fines, fees, and restitution, but while the costs, fines, and fees are listed, the restitution section is blank (O.R. 707).

**5.** Although section 991f(A)(1), (3), and (C)(2) permit a restitution award of up to three times the victim's economic loss (*i.e.*, actual financial detriment), the economic loss used as the baseline for the treble award must still be determined with reasonable certainty.

**6.** For example, trial testimony by a bank officer showed that a loan used by victim Robert Donaldson to buy into one of Logsdon's schemes was written off by the lending bank as uncollectable. Additionally, trial testimony by another bank officer and victim, John Macy, showed that Macy sued the bank that loaned him the money to buy into one of Logsdon's schemes and, that the bank

factual basis for the district court's determination of the victims' loss, nor even identify the victims to whom restitution is due, we cannot conclude that the restitution amount ordered by the district court was determined with reasonable certainty. We find, therefore, that the restitution ordered in this case was determined in an arbitrary manner and, as a result, was an abuse of discretion by the district court. *Honeycutt*, 1992 OK CR 36, ¶ 31, 39, 834 P.2d at 1000–1001. The district court's restitution order must be vacated and new proceedings conducted to determine a proper restitution amount.

## 5.

### Sufficiency of the Evidence

### Fraudulent Sale of Security

### (Count 1)

■ ¶ 14 The evidence was sufficient to support a conviction for the fraudulent sale of a security in Count 1 because when the evidence is viewed in the light most favorable to the State, any rational trier of fact could have found the essential elements of the crime charged beyond a reasonable doubt. *Spuehler v. State*, 1985 OK CR 132, ¶ 7, 709 P.2d 202, 203–04. In this instance, the evidence showed that Logsdon intentionally misled Gene Stephenson into purchasing an interest in a forty acre tract of land, which Logsdon promised would be put up for sale immediately and sold at a profit, by telling Stephenson that the property was vacant and would be sold quickly, while failing to disclose the material fact that he (Logsdon) intended to move into the house on the property and live there indefinitely.

## 6.

### Multiple Punishment & Double Jeopardy

### Forgery & Fraudulent Sale of a Security

### (Counts 9, 10, 11, 12)

¶ 15 Logsdon contends that his convictions on Counts 9, 10, 11, and 12 for second degree

and Macy settled the suit for an undisclosed

forgery and fraudulent sale of a security violate the statutory prohibition against multiple punishment and further violate constitutional prohibitions against double jeopardy. Logsdon did not raise these claims in the district court. They are therefore waived and reviewed only for plain error. *Head v. State*, 2006 OK CR 44, ¶ 9, 146 P.3d 1141, 1144.

¶ 16 In Count 9 Logsdon was convicted of forging the signature of Robert Donaldson to a cattle sale contract. In that contract Donaldson purportedly agreed to purchase 190 cattle from Logsdon for $100,082. In Count 10 Logsdon was convicted of fraudulently selling a one-half interest in that contract to Gene Stephenson for $46,550. In Count 11 Logsdon was convicted of forging Donaldson's signature to a second cattle contract. In that contract Donaldson purportedly agreed to purchase 160 cattle from Logsdon for $108,550. In Count 12 Logsdon was convicted of fraudulently selling a one-half interest in the second contract to Gene Stephenson for $47,200.

■ ¶ 17 Logsdon contends that his convictions on both Counts 9 and 10 (involving the sale of 190 head of cattle) and on both Counts 11 and 12 (involving the sale of 160 head of cattle) violate the statutory prohibition against multiple punishment of 21 O.S. 2001, § 11. Logsdon asserts that the forging of Donaldson's signatures to the cattle sale options contracts was part of the act of fraudulently selling interests in those contracts to Gene Stephenson. According to Logsdon, these four convictions violate section 11 because each pair of convictions constitutes two convictions for a single course of conduct. In other words, Logsdon claims that the forgeries of the cattle option contracts in Counts 9 and 11 were merely the means to achieving the ultimate objective of committing the primary offense of fraudulently inducing Stephenson to purchase a security, as alleged in Counts 10 and 12. In *Davis v. State*, 1999 OK CR 48, ¶¶ 9–13, 993 P.2d 124, 126–27, this Court specifically re-

amount.

jected the "ultimate objective" or "primary offense" test, in favor of a test that focuses on the relationship between the crimes, in order to determine whether the crimes truly arose out of a single act. Where there is a series of separate and distinct crimes, as in this case, Section 11 is not violated. *Id.*, ¶ 12, 993 P.2d at 126.

¶ 18 In this instance the acts of forgery and the acts of fraudulently selling an investment contract occurred at two different times (albeit on the same day), and each involved different victims. The forgery crimes were completed when Logsdon signed Donaldson's name to the cattle sale contracts. The fact that Logsdon later used those forged contracts to induce Stephenson to purchase an interest in a venture involving each of the two non-existent herds of cattle does not cause the acts of forgery to merge into the subsequent acts of fraudulently selling a security. The crime of forgery does not depend on whether the forged document is later used to induce a fraudulent sale of an interest in the subject of the forged instrument. Because the crimes of forgery and fraudulently selling securities were separate and distinct acts, and because each crime involved separate victims, Logsdon's convictions for these crimes do not violate section 11. There is no plain error.

¶ 19 Having determined that section 11 does not apply in this case, we turn now to Logsdon's constitutional double jeopardy claims. *See Mooney v. State*, 1999 OK CR 34, ¶ 14, 990 P.2d 875, 882–83 (holding that because section 11 complements double jeopardy protections of Oklahoma and United States Constitutions, traditional double jeopardy analysis is conducted only if section 11 does not apply). This Court applies the test set out in *Blockburger v. United States*, 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306, 309 (1932), to evaluate constitutional claims of double jeopardy. *Watts v. State*, 2008 OK CR 27, ¶ 16, 194 P.3d 133, 139. Under the *Blockburger* test, this Court asks whether each offense requires proof of an additional fact that the other does not. *Watts*, 2008 OK CR 27, ¶ 16, 194 P.3d at 139–40. Here, the crimes of forgery and fraudulent sales of securities have no elements in common. Thus they both require proof of entirely different facts, not just proof of one fact that the other does not. There is no constitutional double jeopardy violation. There is no plain error.

7.

**Sufficiency of the Evidence**

**Obtaining a Valuable Thing by False Pretenses**

**(Count 13)**

¶ 20 The evidence was sufficient to support a conviction for obtaining money or other valuable thing by false pretenses. *Spuehler*, 1985 OK CR 132, ¶ 7, 709 P.2d at 203–04. Title 21 O.S.2001, § 1541.1 applies not just to property whose ownership may be evidenced by documents of title, but also to intangible things with determinable value. *Cf. Stokes v. State*, 1961 OK CR 76, ¶ 20, 366 P.2d 425, 431.

¶ 21 In this case the evidence showed that at the time Logsdon induced Donaldson to pay Stephenson $55,500 for 110 head of non-existent cattle, Logsdon was indebted to Stephenson for amounts Stephenson earlier gave him to buy into their joint real estate venture and two separate cattle ventures. Donaldson's fraudulently induced payment to Stephenson constituted a valuable thing to Logsdon because the payment was used as a partial repayment of Logsdon's debt to Stephenson. Certainly, money given from one party to another in order to satisfy the debt of a third party is a "valuable thing" to the third party, even though the third party, as the beneficiary of the transaction, never takes physical possession or title to the funds. Because Donaldson's payment to Stephenson on Logsdon's behalf was a "valuable thing," as contemplated by section 1541.1, the evidence of the payment was sufficient to support conviction on this count.

### 8.

### Consecutive Sentences

¶ 22 The district court did not abuse its discretion by ordering Logsdon's sentences to run consecutively. *See Riley v. State,* 1997 OK CR 51, ¶ 20, 947 P.2d 530, 534; 22 O.S.2001, § 976.

### 9.

### Sentencing

### Racketeering

### (Count 17)

 ¶ 23 Logsdon claims that his fifteen-year sentence on Count 17 for racketeering should be modified because the jury was not instructed that he would be required to serve 50% of his sentence before becoming eligible for early release. Logsdon did not request an instruction on this point, nor did he object to its absence. We therefore review for plain error. *Watts v. State,* 2008 OK CR 27, ¶ 9, 194 P.3d 133, 136–37.

¶ 24 Title 22 O.S.2001, § 1404(A) provides that any person convicted of racketeering under section 1403:

> shall be punished by a term of imprisonment of not less than ten (10) years and **shall not be eligible for** a deferred sentence, probation, suspension, work furlough, or **release from confinement on any other basis** until the person has served one-half (1/2) of his or her sentence (emphasis added).

Logsdon relies on *Anderson v. State,* 2006 OK CR 6, 130 P.3d 273, to argue that his jury should have been instructed that he would have to serve at least 50% of whatever sentence was imposed on his racketeering conviction before becoming eligible for any type of release from confinement (*e.g.,* parole). In *Anderson,* this Court held that when a defendant is sentenced under 21 O.S. § 13.1 and its 85% limit on parole eligibility for any of its enumerated crimes, the jury

should be instructed that the defendant would be required to serve 85% of any sentence before becoming eligible for parole. *Id.,* ¶ 25, 130 P.3d at 283. Key to our holding in *Anderson* was the reasoning that instructing juries on parole eligibility would avoid unfair prejudice to defendants resulting from jurors increasing sentences based on uninformed guesses about parole. *Id.,* ¶ 23, 130 P.3d at 282.

¶ 25 *Anderson's* rationale logically applies in this situation. To ensure that Logsdon's jury did not increase his sentence based on an uninformed guess about when he might be released on parole (a form of early release from confinement), the district court should have instructed the jury that in this instance Logsdon would have to serve at least 50% of his sentence before becoming eligible for release from confinement on parole. The district court erred by not instructing the jury on the 50% early-release limitation.

¶ 26 Nevertheless, under plain error review, reversal is not warranted unless the error affected Logsdon's substantial rights, meaning the error affected the outcome of the proceeding. *Hogan v. State,* 2006 OK CR 19, ¶ 38, 139 P.3d 907, 923. That is, reversal is not warranted if this Court has no grave doubt that the error had a substantial influence on the outcome. *Simpson v. State,* 1994 OK CR 40, ¶ 37, 876 P.2d 690, 702. In other words, reversal is not warranted for plain error if the error was harmless. *Id.,* ¶¶ 19–20, 876 P.2d at 698.

¶ 27 In this instance the jury imposed a sentence of fifteen years on Count 17. The minimum sentence for this offense was ten years. 22 O.S.2001, § 1404(A). Because the jury imposed a sentence 50% higher than the statutory minimum, and because it is impossible to determine from the bare verdict just what rationale the jury employed to arrive at its decision, it is not possible to rule out the possibility that the jury made its sentencing decision based on a guess as to when Logsdon might become eligible for parole. It is not possible, therefore, to conclude that the error was harmless. The lack of an instruc-

tion informing the jury that Logsdon would be required to serve 50% of the prison time imposed was plain error. For that reason we modify the sentence on Count 17 to a term of imprisonment of ten years.

### 10.

#### Multiple Punishment & Double Jeopardy

#### Racketeering (Count 17) and Predicate Offenses (Counts 1 through 16)

■ ¶ 28 Logsdon claims that his conviction for racketeering in Count 17 violates the statutory prohibition against multiple punishment at 21 O.S.2001, § 11, and the United States and Oklahoma constitutional prohibitions against double jeopardy. The crux of Logsdon's claim is that the racketeering count incorporated the offenses alleged in Counts 1 through 16 and, therefore, the conviction on the racketeering count constituted re-conviction and multiple punishment on the incorporated counts. Because Logsdon did not raise this claim in the trial court, it is reviewed only for plain error. *Head v. State*, 2006 OK CR 44, ¶ 9, 146 P.3d 1141, 1144.

¶ 29 In *Watts*, 2008 OK CR 27, ¶ 16, 194 P.3d at 139, this Court held that if multiple crimes arise from one act, 21 O.S.2001, § 11 prohibits punishment for more than one crime, "absent specific legislative intent." In this instance, the Legislature explicitly expressed its intent that the predicate acts charged in a racketeering count may also be prosecuted separately. The racketeering statute, 22 O.S.2001, § 1408, states:

Criminal penalties and fines pursuant to the Oklahoma Corrupt Organizations Prevention Act are supplemental and not mu-tually exclusive, except when so designated, and shall not preclude the application of any other criminal or civil remedy pursuant to any other provision of the law.

Relying on this statutory provision, this Court held in *Carter v. State*, 1996 OK CR 34, ¶ 14, 922 P.2d 634, 638, that the Oklahoma Corrupt Organizations Prevention Act defines criminal racketeering by listing specific offenses that can serve as predicate crimes for the racketeering offense and that "[c]learly, these offenses constitute 'conduct' which can both be a foundation for the [racketeering] charge *and* be chargeable on their own merit" (emphasis added). In section 1408 the Legislature expressly declared its intent that predicate crimes charged in a racketeering prosecution also be subject to prosecution as individual crimes. These convictions for racketeering and the predicate offenses underlying the racketeering charge do not result in impermissible multiple punishment in violation of 21 O.S.2001, § 11.

■ ¶ 30 Logsdon also claims that his conviction on Count 17 (for racketeering), along with Count 1 (fraudulent sale of security) and Counts 3 through 16 (fraudulent sales of securities, second-degree forgery, and obtaining money by false pretenses) violate the double jeopardy provisions of the Fifth Amendment to the United States Constitution and Article II, § 21 of the Oklahoma Constitution.[7] Logsdon did not raise this objection in the trial court. The claim is reviewed, therefore, only for plain error. *Head*, 2006 OK CR 44, ¶ 9, 146 P.3d at 1144.

¶ 31 As already noted, this Court utilizes the test set out by the United States Supreme Court in *Blockburger*, 284 U.S. at 304, 52 S.Ct. at 182, 76 L.Ed. at 309 (1932), to

---

7. Logsdon argues that his double jeopardy rights, as set out in Article II, §§ 7 and 20 of the Oklahoma Constitution, were violated by his multiple convictions (Aplt's Brief at 41). Sections 7 and 20 of the Oklahoma Constitution do not pertain to double jeopardy. The double jeopardy provisions of the Oklahoma Constitution are found at Article II, § 21, which states:

No person shall be compelled to give evidence which will tend to incriminate him, except as in this Constitution specifically provided; nor shall any person, after having been once acquitted by a jury, be again put in jeopardy of life or liberty for that of which he has been acquitted. Nor shall any person be twice put in jeopardy of life or liberty for the same offense.

Logsdon's references to Article II, §§ 7 and 20 appear to be a scrivener's error. For purposes of this analysis, we assume that he meant to cite Article II, § 21 as the basis of his double jeopardy claim.

evaluate constitutional claims of double jeopardy. *Watts,* 2008 OK CR 27, ¶ 16, 194 P.3d at 136. Under the *Blockburger* test, this Court asks whether each offense requires proof of an additional fact that the other does not. *Id.*

¶ 32 Count 17 charged Logsdon with racketeering. To obtain a conviction for racketeering, the State must prove, among other things, that the defendant "participated in, directly or indirectly, the affairs of the enterprise through a pattern of racketeering activity." 22 O.S.2001, § 1403. Count 1 and Counts 3 through 16 charged multiple counts of fraudulent sales of securities, second-degree forgery, and obtaining money by false pretenses. None of these crimes required proof of a pattern of racketeering activity. Because Count 17 required proof of an element not required by any other count, Logsdon's convictions do not violate either the Fifth Amendment to the United States Constitution or Article II, § 21 of the Oklahoma Constitution.

### 11.

### Evidence: Hearsay

¶ 33 Logsdon claims the trial court allowed inadmissible hearsay into evidence when it permitted Gene Stephenson to testify that the private investigator he hired did not find any cattle belonging to him or Logsdon. Logsdon specifically challenges the following testimony:

Q. What were your instructions to him?

A. To find any cattle that were ours or Jack Logsdon's at these sites.

Q. Okay.

A. And see if they were there, in fact, physically.

Q. What were the results that were reported back to you?

MR. MARTIN: Which would be hearsay, Your Honor.

THE COURT: No. He may tell what he was told in answer to that question.

Q. (By Mr. Rogers) What was the result?

A. That there were no cattle. None.

(Tr. Vol. 5, 107–08).

¶ 34 Hearsay "is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." 12 O.S.Supp.2002, § 2801(A)(3). The State contends that the statement attributed by Stephenson to his private detective was not hearsay because it was not offered to prove the truth of any matter, but was instead offered to show one of the steps he (Stephenson) took to locate the cattle Logsdon had supposedly sold to him.

¶ 35 The question eliciting the challenged response was asked in the context of several questions about what Stephenson did to locate the cattle. Stephenson testified that he gave the investigator the supposed locations for the cattle and paid him $7,800 to search for the cattle. This testimony clearly established that one of the steps Stephenson took to locate the cattle was to hire a private investigator. Contrary to the State's assertion, however, it appears from the context of Stephenson's testimony that the question about the result of the investigator's work was unnecessary to show what steps Stephenson took to locate the cattle, but was intended instead to provide some evidence of the truth of the matter asserted (*i.e.,* there were no cattle). As a statement offered as proof of the matter asserted, the statement attributed to the private investigator by Stephenson was hearsay.

¶ 36 Anticipating this finding, the State argues that the error, if any, was nevertheless harmless beyond a reasonable doubt. Indeed, as the State notes, this Court has held that the improper admission of hearsay evidence is subject to harmless error analysis. *See Frederick v. State,* 2001 OK CR 34, ¶ 102, 37 P.3d 908, 936 (finding that improper admission of hearsay was harmless based on other evidence of defendant's guilt). *Cf. Humphreys v. State,* 1997 OK CR 59, ¶ 23, 947 P.2d 565, 574 (finding reversal not warranted for Confrontation Clause violation be-

cause error did not contribute to verdict and was therefore harmless).

¶ 37 In this instance, as the State points out, even if the offending testimony had not been admitted, the other evidence concerning the non-existent cattle was strong. Specifically, Stephenson testified that despite his attempts to get Logsdon to sell the cattle, Logsdon always made excuses why they could not be sold, including one instance in which Logsdon told Stephenson that his wife was divorcing him, that the cattle were involved in the litigation, and her lawyer was requesting "a hold on everything" (Tr. Vol. 5, 109). Additionally, OSBI Agent Tommy Johnson testified that (1) he found nothing in Logsdon's bank accounts showing that he purchased any cattle for Stephenson; (2) Logsdon's tax returns did not show that he spent any money on the care or upkeep of the supposed cattle owned by Stephenson; and (3) the number of cattle set out in the purported bills of sale did not match the number of cattle Stephenson believed he was purchasing. Furthermore, neither Logsdon's individual tax returns nor the tax returns filed on behalf of his companies indicated that he was buying, selling, or caring for cattle in the numbers he was representing to his victims, including Stephenson. In light of this strong evidence supporting the fact that the cattle were non-existent, the hearsay evidence error was harmless beyond a reasonable doubt. *See Dodd v. State*, 2004 OK CR 31, ¶ 49, 100 P.3d 1017, 1034 (finding erroneous admission of hearsay evidence harmless in face of strong evidence of guilt); *Frederick*, 2001 OK CR 34, ¶ 102, 37 P.3d at 936 (same); *cf. Humphreys*, 1997 OK CR 59, ¶ 23, 947 P.2d at 574 (finding Confrontation Clause error harmless beyond reasonable doubt because error did not contribute to verdict).

## 12.

### Prosecutorial Misconduct

¶ 38 The prosecutor's closing argument did not raise the prohibited societal alarm argument. The prosecutor did not talk about deterring other persons who may commit crime, nor did he talk about the crime rate or urge the jury to make an example out of Logsdon. Rather, the prosecutor spoke only about Logsdon's crimes having attacked society and that the jury, acting on behalf of society, would have to determine the proper punishment. The prosecutor's argument was within the proper limits of reasonable argumentation. *McElmurry v. State*, 2002 OK CR 40, ¶ 151, 60 P.3d 4, 34.

## 13.

### Evidence: Other Crimes

¶ 39 Logsdon claims that the prosecutor was allowed to elicit improper testimony about two unrelated fraudulent business transactions. According to Logsdon, the testimony about these two transactions constituted evidence of other crimes that is inadmissible under *Burks v. State*, 1979 OK CR 10, 594 P.2d 771.

¶ 40 In support of this claim, Logsdon's brief points to several pages in the trial transcript. The cited pages contain testimony about a cattle transaction and portions of the prosecutor's closing argument urging the jury to return five-year sentences on the non-racketeering counts and the maximum sentence on the racketeering count. None of the pages cited contain any reference to a real property transaction. The State's brief-in-chief called attention to this fact, but Logsdon neither moved to supplement his brief-in-chief with relevant citations to the record nor addressed the matter in his reply brief.

¶ 41 Rule 3.5(A)(5), *Rules of the Oklahoma Court of Criminal Appeals*, Title 22, Ch. 18, App. (2008), requires that a party's brief cite to the portion of the record in which the alleged error is located and states that failure to do so "constitutes waiver of the alleged error." The trial transcript in this case consists of 1,329 pages in nine volumes. The testimony Logsdon complains about is not recorded on any of the pages he cites.

The claim is waived for failure to cite the applicable portion of the record containing the alleged error. *See Armstrong v. State,* 1991 OK CR 34, ¶ 24, 811 P.2d 593, 599 ("We are unable to address one of the appellant's allegations of prosecutorial misconduct for his citation to the transcript contains no improper hearsay testimony, as he alleges, only his argument for a mistrial. We will not search the record to find the errors an appellant attempts to raise"); *see also Stouffer v. State,* 2006 OK CR 46, ¶ 126, 147 P.3d 245, 271 ("[t]his Court will not search the record to support the appellant's unsupported assignments of error"); *Phillips v. State,* 1999 OK CR 38, ¶ 65, n. 6, 989 P.2d 1017, 1036, n. 6 (same).

### 14.

### Cumulative Error

 ¶ 42 Logsdon's cumulative error argument is without merit. Although we have found errors in his case, when considered in the aggregate, the errors do not require relief because they neither rendered his trial fundamentally unfair, tainted the jury's verdict, nor rendered sentencing unreliable. Any errors were harmless beyond a reasonable doubt, individually and cumulatively. *See Hogan v. State,* 2006 OK CR 19, ¶ 98, 139 P.3d 907, 937 (holding that where numerous irregularities occurring during course of trial tend to prejudice rights of defendant, reversal is required only if cumulative effect of all errors was to render trial fundamentally unfair, taint jury's verdict, or render sentencing unreliable).

### DECISION

¶ 43 The Judgment of the District Court is **AFFIRMED.** The Sentence on Count 17 (Racketeering) is **MODIFIED** to ten years. The sentences on the remaining counts are **AFFIRMED.** The District Court's restitution order is **VACATED,** and the case is **REMANDED** on the issue of the victims' loss, for a proper determination in accordance with this opinion. Pursuant to Rule 3.15, *Rules of the Oklahoma Court of Criminal Appeals,* Title 22, Ch.18, App. (2010), the **MANDATE** is **ORDERED** issued upon the delivery and filing of this decision.

JOHNSON, P.J., and LEWIS, J.: concur.

LUMPKIN, J. concur in results.

LUMPKIN, Judge: concur in results.

¶ 1 Except for the modification of the sentence on Count 17, I agree with the results reached by the Court in this case and the Court's interpretation of the provisions of 22 O.S.2001, § 991f.

¶ 2 As to the issue of failure of the trial court to adequately instruct the jury that Count 17, Racketeering, required a person convicted of the crime to serve at least 50% of the sentence prior to being eligible for parole, I agree error occurred. However, I cannot find prejudice resulted from that error. The record is void of a question by the jury, as in *Carter v. State,* 2006 OK CR 42, ¶ 5, 147 P.3d 243, 244, that required a modification of the sentence, *i.e.,* "the error [did not] result in a miscarriage of justice or constitute a substantial violation of a constitutional right." *Id.* The sentence was merely 5 years more than the minimum sentence. On the face of the sentence, it is clear it was based on a rational basis rather than an emotional response. Therefore, I cannot agree with the rationale set out for modification of the sentence, and I would find the error harmless.